No. 25-7384

# In the United States Court of Appeals for the Ninth Circuit

―――――――――――

QUEERDOC, PLLC,

*Movant-Appellee,*

*v.*

UNITED STATES DEPARTMENT OF JUSTICE,

*Respondent-Appellant.*

―――――――――――

*On Appeal from the United States District Court for the Western District of Washington, No. 2:25-mc-42 (Hon. Jamal N. Whitehead)*

―――――――――――

**BRIEF OF AMICUS CURIAE SEATTLE CHILDREN'S HOSPITAL IN SUPPORT OF AFFIRMANCE**

―――――――――――

JEFFREY B. COOPERSMITH
CORR CRONIN LLP
 *1015 Second Avenue, Floor 10*
 *Seattle, Washington 98104*
 *(206) 625-8600*

DAVID M. ZINN
CHRISTOPHER N. MANNING
AMY MASON SAHARIA
 *Counsel of Record*
DANA B. KINEL
PATRICK C. HYNDS
WILLIAMS & CONNOLLY LLP
 *680 Maine Avenue SW*
 *Washington, DC 20024*
 *(202) 434-5000*
 *asaharia@wc.com*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, amicus Seattle Children's Hospital states that: (1) Seattle Children's Hospital is a Washington nonprofit corporation; (2) Seattle Children's Hospital's sole corporate member is Seattle Children's Healthcare System, a Washington nonprofit corporation; and (3) no publicly held corporation owns 10% or more of Seattle Children's Hospital.

*/s/ Amy Mason Saharia*

AMY MASON SAHARIA
WILLIAMS & CONNOLLY LLP
*680 Maine Avenue SW*
*Washington, DC 20024*
*(202) 434-5000*
*asaharia@wc.com*

JANUARY 23, 2026

# TABLE OF CONTENTS

Page

STATEMENT OF INTEREST..................................................................1

INTRODUCTION AND SUMMARY OF ARGUMENT ...................................3

ARGUMENT ....................................................................................7

I.    DOJ Obscures the Unusual Nature of Its Subpoenas .............................7

    A.    DOJ's Subpoenas Represent an Unprecedented Dragnet ...........7

    B.    DOJ Disregards the Other Subpoena Proceedings ......................10

II.   The District Court Properly Set Aside the Subpoena ...........................14

    A.    The Fourth Amendment Proscribes Unreasonable
        Subpoenas .............................................................................15

    B.    DOJ Did Not Meet Its Prima Facie Burden .................................16

    C.    The District Court's Improper Purpose Finding Was Not
        Clear Error ............................................................................19

        1.    *The Administration's conduct proves the improper
            purpose* ..........................................................................20

        2.    *DOJ's evolving, after-the-fact explanations prove the
            improper purpose* ..........................................................28

        3.    *The extraordinary breadth of the subpoena proves
            the improper purpose* .....................................................32

III.  The Subpoenas Improperly Invade Privacy Interests ...........................33

CONCLUSION................................................................................35

# TABLE OF AUTHORITIES

Page

## CASES

*Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001)........................30

*Burlington N. R.R. Co. v. Off. of Inspector Gen., R.R. Ret. Bd.*,
    983 F.2d 631 (5th Cir. 1993)...............................................................26

*Carpenter v. United States*, 585 U.S. 296 (2018)....................................33

*Carson v. Depuy Spine, Inc.*, 365 F. App'x 812 (9th Cir. 2010)........................31

*CFPB v. Accrediting Council for Indep. Colls. & Schs.*,
    854 F.3d 683 (D.C. Cir. 2017)..............................................................14

*Crystal v. United States*, 172 F.3d 1141 (9th Cir. 1999)..............................12, 16

*Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215 (2022)...........................6

*FDIC v. Garner*, 126 F.3d 1138 (9th Cir. 1997)..................................16, 20

*FTC v. Atl. Richfield Co.*, 567 F.2d 96 (D.C. Cir. 1977)...............................25

*In re 2025 Subpoena to Children's Nat'l Hosp. ("Children's Nat'l")*,
    2026 WL 160792 (D. Md. Jan. 21, 2026)..................................*passim*

*In re 2025 UPMC Subpoena ("Univ. of Pittsburgh")*,
    2025 WL 3724705 (W.D. Pa. Dec. 24, 2025)..............................*passim*

*In re Admin. Subpoena No. 25-1431-019 ("Boston Children's")*,
    800 F. Supp. 3d 229 (D. Mass. 2025).......................................*passim*

*In re Dep't of Just. Admin. Subpoena No. 25-1431-030*
    *("Colo. Children's")*, 2026 WL 33398 (D. Colo. Jan. 5, 2026).............*passim*

*In re Subpoena Duces Tecum*, 228 F.3d 341 (4th Cir. 2000)...............15, 17, 25

*In re Subpoena Duces Tecum No. 25-1431-016 ("Seattle Children's")*,
    2025 WL 3562151 (W.D. Wash. Sept. 3, 2025)..........................*passim*

Page

Cases—continued:

*In re Subpoena No. 25-1431-014 ("Children's Hosp. of Phila."),*
  2025 WL 3252648 (E.D. Pa. Nov. 21, 2025)............................................*passim*

*June Med. Servs. L.L.C. v. Russo*, 591 U.S. 299 (2020)....................................33

*Lynn v. Biderman*, 536 F.2d 820 (9th Cir. 1976) ........................................25, 26

*McComb v. Hunt Foods, Inc.*, 167 F.2d 905 (9th Cir. 1948) .............................11

*McLane Co. v. EEOC*, 581 U.S. 72 (2017) .........................................................11

*Nw. Mem'l Hosp. v. Ashcroft*, 362 F.3d 923 (7th Cir. 2004) ............................34

*Okla. Press Publ'g Co. v. Walling*, 327 U.S. 186 (1946)......................................4

*Peters v. United States*, 853 F.2d 692 (9th Cir. 1988)........................................15

*Reich v. Mont. Sulphur & Chem. Co.*, 32 F.3d 440 (9th Cir. 1994).................19

*See v. City of Seattle*, 387 U.S. 541 (1967) .................................................14, 15

*Tucson Woman's Clinic v. Eden*, 379 F.3d 531 (9th Cir. 2004)..............6, 33, 34

*United States v. Church of Scientology of Cal.*,
  520 F.2d 818 (9th Cir. 1975)........................................................................16, 20

*United States v. Clarke*, 573 U.S. 248 (2014) ....................................................20

*United States v. Gertner*, 65 F.3d 963 (1st Cir. 1995)........................................15

*United States v. Goldman*, 637 F.2d 664 (9th Cir. 1980)..............................12, 16

*United States v. Jose*, 131 F.3d 1325 (9th Cir. 1997) ........................................20

*United States v. Kis*, 658 F.2d 526 (7th Cir. 1981)............................................16

*United States v. Morton Salt Co.*, 338 U.S. 632 (1950)..................................4, 15

*United States v. Powell*, 379 U.S. 48 (1964) ...............................................*passim*

iv

Page

Cases—continued:

*United States v. Skrmetti*, 605 U.S. 495 (2025) .....................................25

*United States v. Westinghouse Elec. Corp.*,
    638 F.2d 570 (3d Cir. 1980) .........................................................33, 34

*Wearly v. FTC*, 616 F.2d 662 (3d Cir. 1980)..................................14

## CONSTITUTION, STATUTES, AND REGULATION

U.S. Const. amend. IV..............................................................3, 4, 16, 32

18 U.S.C.
    § 24.................................................................................................3, 19
    § 3486........................................................................................*passim*

False Claims Act, 31 U.S.C. §§ 3729-3733 ...............................21, 28, 29

Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301-399i ............*passim*

Wash. Rev. Code Ann.
    § 7.115.010..........................................................................................2
    § 74.09.675..........................................................................................2
    § 18.130.450........................................................................................2

Fed. R. App. P. 29(a) ................................................................................1

Exec. Order No. 14187, 90 Fed. Reg. 8,771 (Jan. 28, 2025) .............7, 20, 21, 28

## OTHER AUTHORITIES

AG Order No. 3591-2015 ...........................................................................3

Helen Christine Allen, et al., *Off-Label Medication Use In Children,
    More Common Than We Think: A Systematic Review of the
    Literature*, 111 J. Okla. State Med. Assoc. 776 (Oct. 2018) ........29

Am. Acad. of Pediatrics, *Policy Statement: Off-Label Use of Drugs in
    Children*, 133 Pediatrics 563 (2014).................................................29

Page

Other Authorities—continued:

Solcyre Burga, *Boston Hospital Hails 'Safeguarding' as Judge Blocks Trump Administration's Subpoena of Trans Kids' Medical Records*, Time (Sept. 10, 2025) .......................................................................... 24

Steven A. Engel, "Whether the Food and Drug Administration Has Jurisdiction over Articles Intended for Use in Lawful Executions," 43 Op. O.L.C. 81 (2019) .................................................................. 31

Katy Golvala & Dave Altimari, *Connecticut Children's begins 'winding down' youth gender program*, CT Mirror (July 23, 2025) ........................... 27

Lewis A. Grossman, et al., *Using FDA Law to Threaten Medical Practice*, N. Engl. J. Med. (Jan. 7, 2026) ...................................................... 29

H.R. Rep. No. 106-669 (2000) ................................................................. 14

Robert F. Kennedy, Jr., *Safety, Effectiveness, & Prof. Standards of Care for Sex-Rejecting Procedures on Children & Adolescents* (Dec. 18, 2025) ............................................................................... 23

U.S. Dep't of Health and Human Servs. (@HHSGov), X (Dec. 26, 2025) ................................................................................ 24

U.S. Dep't of Health and Human Servs., *HHS Acts to Bar Hospitals from Performing Sex-Rejecting Procedures on Children* (Dec. 18, 2025) ............................................................................... 23

U.S. Food and Drug Admin., *Understanding Unapproved Use of Approved Drugs "Off Label"* (Feb. 5, 2018) ..................................... 30

## STATEMENT OF INTEREST[1]

Seattle Children's Hospital, founded in 1907, is the largest pediatric hospital in the Pacific Northwest. It serves patients from Washington, Wyoming, Alaska, Montana, Idaho, and beyond, handling more than half a million patient visits in its most recent fiscal year. The Hospital's services cover virtually every pediatric specialty—for example, it treats children with cancer, diabetes, and epilepsy; conducts life-saving transplant surgeries; and cares for premature newborns born across the region in its Level IV neonatal intensive care unit. Patient trust in the institution is critical to the Hospital's mission; patients and their families rely on Seattle Children's to protect intimate medical and mental health information from unwarranted disclosure.

Among other specialties, the Hospital has provided gender-affirming care since January 2020 to approximately 3,100 minor patients with gender dysphoria—a diagnosis characterized by clinically significant distress, such as anxiety, depression, and/or suicidal ideation. The State of Washington, by statute, permits gender-affirming care (which includes both clinical and

---

[1] Pursuant to Federal Rule of Appellate Procedure 29(a)(4)(E), amicus certifies that no person or entity, other than amicus curiae, its members, or its counsel, made a monetary contribution to the preparation or submission of this brief or authored this brief in whole or in part. The parties have consented to the filing of this brief.

mental-health treatment) and protects the healthcare workers who provide it. Wash. Rev. Code Ann. §§ 7.115.010, 74.09.675, 18.130.450.

Regrettably, the Hospital now finds itself among the group of at least 20 medical providers that received Department of Justice (DOJ) subpoenas virtually identical to appellee's. Among other things, the subpoenas seek troves of sensitive information about patients and individuals who work for the institutions that provide gender-affirming care, including executives, managers, billing staff, doctors, nurses, and other medical providers. Seattle Children's, like appellee, moved to set aside the DOJ subpoena. And like appellee, Seattle Children's prevailed in the district court. The U.S. District Court for the Western District of Washington (Chun, J.) granted Seattle Children's motion. DOJ has moved to alter or amend that judgment, and its motion is pending. Meanwhile, district courts in multiple other jurisdictions have unanimously set aside, in whole or in part, virtually identical subpoenas to other children's hospitals and providers.

DOJ cites neither the *Seattle Children's* case, nor these other cases, in its opening brief. Accordingly, the Hospital submits this brief to ensure the Court is aware of the broader context of the at-issue subpoena and the

subpoenas' impact on many of the Nation's most prominent children's hospitals, including Seattle Children's.

## INTRODUCTION AND SUMMARY OF ARGUMENT

The district court acted well within its discretion in setting aside an administrative subpoena that was issued, not in furtherance of any congressionally authorized investigation, but to advance a political agenda. To conclude otherwise would vest DOJ with power Congress did not give it, violate the Fourth Amendment, and unlawfully shift regulation of the practice of medicine from the States to the federal government.

Congress authorized the Attorney General to issue administrative subpoenas to aid investigations of "Federal health care offense[s]." 18 U.S.C. § 3486(a)(1)(A)(i)(I); *id.* § 24(a) (defining "Federal health care offense"). The Attorney General, in turn, delegated subpoena authority to the Assistant Attorney General for the Civil Division, but specified that the delegation was "limited" to investigations of only one group of Federal health care offenses: potential violations of the Food, Drug, and Cosmetic Act (FDCA). AG Order No. 3591-2015, *In re Subpoena No. 25-1431-014 ("Children's Hosp. of Phila.")*, 25-mc-39 (E.D. Pa. Nov. 19, 2025), Dkt.42-1.

3

Administrative subpoenas, like those here, are not self-enforcing and are subject to court review. As the Supreme Court has long recognized, the Fourth Amendment protects against "officious intermeddling" by agencies issuing subpoenas "unauthorized by law" or seeking material "irrelevant to any lawful purpose." *Okla. Press Publ'g Co. v. Walling*, 327 U.S. 186, 213 (1946); *see also United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950) ("Of course a governmental investigation … may be of such a sweeping nature and so unrelated to the matter properly under inquiry as to exceed the investigatory power."). Agencies may not issue administrative subpoenas "for an improper purpose," such as "harass[ment]," "to settle a collateral dispute," "or for any other purpose reflecting on the good faith of the particular investigation." *United States v. Powell*, 379 U.S. 48, 58 (1964).

This case strikes at the core of these principles. The subpoena to appellee and the other subpoenas like it are staggering in scope and intrude into the most intimate affairs of patients, families, and healthcare providers. The subpoenas demand the production of all medical records of patients who received gender-affirming care over a five-year period, including these patients' personal identifiable information, "clinical indications," "diagnoses," and "assessments" (including mental-health information), all doctor-patient

4

communications for these patients, all personnel files of their healthcare providers, and more.

Multiple district courts have agreed that the subpoenas, in whole or in part, are not reasonably related to any congressionally authorized investigative purpose. ER-5-19; *In re Subpoena Duces Tecum No. 25-1431-016 ("Seattle Children's")*, 2025 WL 3562151 (W.D. Wash. Sept. 3, 2025)[2]; *In re Admin. Subpoena No. 25-1431-019 ("Boston Children's")*, 800 F. Supp. 3d 229 (D. Mass. 2025); *Children's Hosp. of Phila.*, 2025 WL 3252648 (E.D. Pa. Nov. 21, 2025); *In re 2025 UPMC Subpoena ("Univ. of Pittsburgh")*, 2025 WL 3724705 (W.D. Pa. Dec. 24, 2025); *see also In re Dep't of Just. Admin. Subpoena No. 25-1431-030 ("Colo. Children's")*, 2026 WL 33398 (D. Colo. Jan. 5, 2026) (report and recommendation); *In re 2025 Subpoena to Children's Nat'l Hosp. ("Children's Nat'l")*, 2026 WL 160792 (D. Md. Jan. 21, 2026). No court has ruled in favor of DOJ.

DOJ offers no good reason for this Court to depart from those holdings. Although DOJ contends the subpoena to appellee is routine, nothing about this investigation is routine. In response to appellee's motion to set aside the

---

[2] All references to "Dist.Ct.Dkt.#" are to the docket in Seattle Children's case, 25-mc-41 (W.D. Wash.).

subpoena (and in Seattle Children's case as well), DOJ produced no evidence that the investigation was being conducted for a legitimate purpose or that the subpoena sought information relevant to any such purpose.

Even if DOJ had offered evidence, the district court did not clearly err in finding DOJ's true purpose was an improper one: to pressure providers to end gender-affirming care. The Administration's repeated public statements—including in official documents—prove the subpoena was issued to achieve that goal. So, too, do DOJ's post hoc, shifting attempts to articulate a different reason. As does the subpoena's unusual breadth. Because DOJ cannot use a subpoena to "settle a collateral dispute," *Powell*, 379 U.S. at 58, the district court was well within its discretion in setting it aside. This Court thus should affirm.

At a minimum, the Court should affirm the decision as to the subpoena's requests for personnel and patient records, because the individual privacy interests in those confidential records outweigh the government's interest in them. *See Tucson Woman's Clinic v. Eden*, 379 F.3d 531, 551-54 (9th Cir. 2004), *abrogated on other grounds by Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215 (2022).

## ARGUMENT

### I. DOJ Obscures the Unusual Nature of Its Subpoenas

Reading DOJ's opening brief, one could be forgiven for thinking this case is simply about one administrative subpoena, issued to one clinic, set aside by one district court. DOJ barely acknowledges that the subpoena is but one of many. And DOJ fails to note that every district court that has considered a challenge to the subpoenas—whether to the entire subpoena or to only the requests for patient records—has set aside the challenged portions of the subpoenas.

#### A. DOJ's Subpoenas Represent an Unprecedented Dragnet

In mid-2025, DOJ's Civil Division served administrative subpoenas on Seattle Children's, appellee, and at least 18 other providers.[3] DOJ attorneys told subpoena recipients, including Seattle Children's and appellee, that the subpoenas were not prompted by any specific information or allegations concerning the recipients; instead, DOJ counsel reported that DOJ issued the subpoenas "because of" an Executive Order and Attorney General

---

[3] ER-21-47; Dist.Ct.Dkt.2-1 at 2-28; *Boston Children's*, 25-mc-91324 (D. Mass. July 8, 2025), Dkt.5-1; *Children's Hosp. of Phila.*, 25-mc-39 (E.D. Pa. July 8, 2025), Dkt.1 at 34-59; *see also Univ. of Pittsburgh*, 25-mc-1069 (W.D. Pa.); *Children's Nat'l*, 25-mc-709 (D. Md.).

memorandum (discussed *infra* pp.20-22) and because the recipients provide gender-affirming care. Dist.Ct.Dkt.2 (¶4(a)), (e); *see also, e.g.*, SER-9 (¶¶6-7); *Colo. Children's*, 25-mc-63 (D. Colo. Aug. 8, 2025), Dkt.1-3 (¶¶4-7).

The subpoenas direct production of, among other things, private medical records of every patient who received puberty blockers or hormone therapy since 2020 and personnel files of large swathes of workforce members, including anyone with prescribing authority. ER-27-29. As to Seattle Children's, the subpoena implicates approximately 3,100 patients and several thousand workforce members. Dist.Ct.Dkt.3 (¶¶35, 38). Such a fishing expedition "carries more than a whiff of ill-intent." *Univ. of Pittsburgh*, 2025 WL 3724705, at *2.

DOJ usually prefers to keep its criminal investigations confidential. Not here. When several subpoena recipients, including Seattle Children's and appellee, moved to seal their dockets, DOJ opposed sealing. The day after Seattle Children's and appellee filed motions to seal (and before the courts ruled), DOJ *publicly* announced it had "sent more than 20 subpoenas to doctors and clinics," vowing that "[m]edical professionals and organizations" providing gender-affirming care would "be held accountable by this Department of Justice." Dist.Ct.Dkt.21-1. Such conduct and rhetoric, the *Seattle*

*Children's* court observed, "undermines the veracity of [DOJ's] stated purpose of investigating federal healthcare violations and supports its other stated purpose of holding medical professionals and organizations 'accountable' for providing gender-related care for minors." 2025 WL 3562151, at *15.

When subpoena recipients pressed DOJ in court to articulate a valid investigative rationale, DOJ could not do so. In a press release, DOJ characterized its investigation as "includ[ing] healthcare fraud, false statements, and more." Dist.Ct.Dkt.21-1. But in opposition to Seattle Children's motion, DOJ submitted a 6-paragraph declaration admitting that the Civil Division's authority to issue subpoenas was limited to investigations of only FDCA violations. Dist.Ct.Dkt.18-1. As the *Seattle Children's* court noted, DOJ offered no explanation in its "conclusory" declaration for the subpoena's sweeping scope or its relevance to FDCA violations. 2025 WL 3562151, at *8-9. Even more striking, in *QueerDoc* and multiple other cases, DOJ did not submit with its opposition *any* declaration attesting to its investigative rationale.

It was only after district courts set aside DOJ's subpoenas to Seattle Children's and Boston Children's that DOJ belatedly submitted declarations (including the stricken "praecipe" in *QueerDoc*) attempting to articulate a

basis for the subpoenas. *E.g.*, Dist.Ct.Dkt.30. DOJ surmised in these declarations, without support, that providers themselves could be liable under the FDCA for "caus[ing]" the misbranding of drugs. Dist.Ct.Dkt.30 (¶16). DOJ also suggested it was investigating "fraudulent billing," Dist.Ct.Dkt.30 (¶¶31, 36), even though it had already conceded that the Civil Division's authority to issue subpoenas was limited to FDCA violations, Dist.Ct.Dkt.30 (¶¶2-5).[4] That it took DOJ multiple court losses to cobble together an attempted explanation for its "investigation" further confirms the subpoenas' improper purpose. *See Children's Hosp. of Phila.*, 2025 WL 3252648, at *15.

### B. DOJ Disregards the Other Subpoena Proceedings

Perhaps in light of its failure to persuade any district court to enforce its subpoena, DOJ's brief ignores the plethora of rulings quashing its subpoena requests. *See Seattle's Children's*, 2025 WL 3562151 (quashing entire subpoena); *Boston Children's*, 800 F. Supp. 3d 229 (same); ER-5-20 (same); *Children's Hosp. of Phila.*, 2025 WL 3252648 (quashing challenged requests for patient records); *Univ. of Pittsburgh*, 2025 WL 3724705 (same); *Children's Nat'l*, 2026 WL 160792 (same); *see also Colo. Children's*, 2026 WL 33398 (recommending quashing entire subpoena).

---

[4] *See also Boston Children's*, 25-mc-91324 (D. Mass. Oct. 7, 2025), Dkt.37.

This "uniformity of judicial expression in the district courts is significant and impressive." *McComb v. Hunt Foods, Inc.*, 167 F.2d 905, 908 (9th Cir. 1948). That is especially so on clear-error review, as district courts are "better positioned" to decide factual issues such as a subpoena's purpose, and thus "basic principles of institutional capacity counsel in favor of deferential review." *See McLane Co. v. EEOC*, 581 U.S. 72, 79-82 (2017) (citation omitted).

1. ***Seattle Children's.*** DOJ fails to mention in its brief the Seattle Children's case, which hails from the same district as appellee's case and presumably will at some point be before this Court.

The district court's decision setting aside the subpoena to Seattle Children's reinforces why this Court should affirm. And it provides this Court with additional reasons to do so. While not addressed in the district court's decision in *QueerDoc*, the *Seattle Children's* court held that DOJ failed to meet its minimal prima facie burden of establishing the subpoena was issued for a congressionally authorized investigative purpose. 2025 WL 3562151, at *5-9. The district court did not demand much—DOJ needed to meet only a "minimal" burden. *Id.* at *8, *11 (citations omitted). But DOJ's "conclusory" statement in its declaration that the subpoena "was lawfully issued and authorized … in connection with a valid investigation being conducted in [its]

11

office" failed to get there. *Id.* at *8. At most, DOJ established "an 'idle hope' of discovering information related to a federal healthcare offense." *Id.* at *9 (quoting *United States v. Goldman*, 637 F.2d 664, 667 (9th Cir. 1980)).

The *Seattle Children's* court further found that the Hospital met its heavier burden of establishing that DOJ issued the subpoena for an improper purpose—namely, pressuring Seattle Children's into stopping gender-affirming care. *Id.* at *10-13. "Seattle Children's present[ed] significant evidence" of that fact. *Id.* at *11. Because the subpoena "was not issued to investigate a federal healthcare offense," *id.* at *13, it "would [have] be[en] an abuse of the court's process" to enforce it, *id.* at *3 (citing *Crystal v. United States*, 172 F.3d 1141, 1143-44 (9th Cir. 1999)).

*Seattle Children's* is not presently before this Court because DOJ sought reconsideration in that case while simultaneously expediting this appeal. Nevertheless, given the similarities between the cases, Seattle Children's urges this Court to consider the record developed by Seattle Children's, and the district court's reasoning, in assessing whether the district court abused its discretion here.

2. ***Other proceedings.*** Several other courts have quashed near-identical subpoenas. As in *Seattle Children's*, the District of Massachusetts held

12

that DOJ could not meet its minimal *prima facie* burden because it did not submit "affidavits or other evidence to show proper purpose." *Boston Children's*, 800 F. Supp. 3d at 237-39. That court further found DOJ had an improper purpose, as evidenced by the Administration's "goal of ending [gender-affirming care]" and the subpoena's "astonishingly broad" requests. *Id.*

Even in cases where DOJ proffered declarations, district courts found the challenged requests for patient records to be improper. *See Children's Hosp. of Phila.*, 2025 WL 3252648, at *16-19; *Univ. of Pittsburgh*, 2025 WL 3724705, at *1-3; *Children's Nat'l*, 2026 WL 160792, at *7. As the Eastern District of Pennsylvania aptly put it, the government cannot "conduct open-ended discovery in search of witnesses or narratives to support a theory." *Children's Hosp. of Phila.*, 2025 WL 3252648, at *14. That court found that DOJ's "rambling exploration of the Hospital's files to learn the names and medical treatment of children" was an improper fishing expedition that invaded patients' privacy. *Id.* at *15, *34. None of DOJ's "shifting" explanations for its requests justified them. *Id.* at *15-19. "Enforcing these requests," the court concluded, "would transform Congress's 1996 grant of authority in Section 3486 from a tool of legitimate inquiry into a license for intrusion Congress never granted." *Id.* at *12.

13

In *Colorado Children's*, a magistrate judge recommended quashing in full the subpoena to that hospital, finding "the government's aim [was] not actually to investigate FDCA violations, but to use the FDCA as a smokescreen for its true objective of pressuring pediatric hospitals into ending gender-affirming care." 2026 WL 33398, at *7, *11.

## II.  The District Court Properly Set Aside the Subpoena

The district court here appropriately exercised its discretion in setting aside the subpoena to appellee.  Congress routed administrative subpoena enforcement to the courts, 18 U.S.C. § 3486(c), and, recognizing the need "to protect the rights of citizens," provided subpoena recipients a mechanism to challenge them, H.R. Rep. No. 106-669, at 12-13 (2000); 18 U.S.C. § 3486(a)(5).  Thus, "the subpoenaed party may obtain judicial review of the reasonableness of the demand[s]."  *See v. City of Seattle*, 387 U.S. 541, 545 (1967).

When courts review administrative subpoenas, their "role is not that of a mere rubber stamp, but of an independent reviewing authority called upon to insure the integrity of the proceeding."  *Wearly v. FTC*, 616 F.2d 662, 665 (3d Cir. 1980); *see also CFPB v. Accrediting Council for Indep. Colls. & Schs.*, 854 F.3d 683, 689 (D.C. Cir. 2017) (similar).  The district court appropriately exercised that role.

14

### A.     The Fourth Amendment Proscribes Unreasonable Subpoenas

The government must have a "legitimate purpose" for issuing an administrative subpoena. *Powell*, 379 U.S. at 57. It may not issue a subpoena for an improper purpose, such as "to harass the [recipient] or to put pressure on [it] to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation." *Id.* at 58. If a subpoena issued for an improper purpose lands in court, it must be set aside. "[A] court may not permit its process to be abused." *Id.*; *see also United States v. Gertner*, 65 F.3d 963, 968-69 (1st Cir. 1995) (affirming denial of enforcement where stated purpose for subpoena was "pretext").

"[T]he Fourth Amendment requires that [an administrative] subpoena be sufficiently limited in scope, relevant in purpose, and specific in directive so that compliance will not be unreasonably burdensome." *City of Seattle*, 387 U.S. at 544; *Morton Salt*, 338 U.S. at 652-53. This requirement dictates that the "administrative subpoena … may not be so broad so as to be in the nature of a 'fishing expedition.'" *Peters v. United States*, 853 F.2d 692, 700 (9th Cir. 1988) (quashing INS subpoena); *In re Subpoena Duces Tecum*, 228 F.3d 341, 349 (4th Cir. 2000) (no "fishing expeditions"). Put prescriptively, the

government must have "a realistic expectation rather than an idle hope that something may be discovered." *Goldman*, 637 F.2d at 667 (citation omitted).

The government bears the initial burden to demonstrate, by affidavit or declaration, that it is conducting an investigation for a legitimate purpose and that the requested information is reasonably relevant to that purpose. *See, e.g.*, *Powell*, 379 U.S. at 57-58; *Crystal*, 172 F.3d at 1143-44; *FDIC v. Garner*, 126 F.3d 1138, 1143 (9th Cir. 1997); *United States v. Kis*, 658 F.2d 526, 536-37 (7th Cir. 1981). The burden then shifts, and the recipient bears a heavier burden to show the government's purpose was improper. *See, e.g.*, *Powell*, 379 U.S. at 58; *United States v. Church of Scientology of Cal.*, 520 F.2d 818, 824-25 (9th Cir. 1975); *Seattle Children's*, 2025 WL 3562151, at *9-10.

## B.    DOJ Did Not Meet Its Prima Facie Burden

DOJ wrongly asserts (at 17, 19-22, 39-40) that it has no burden to establish the subpoena was issued for a legitimate purpose. Court after court has held that the government bears a prima facie burden of demonstrating that it issued a subpoena for a legitimate purpose and that the information requested is reasonably relevant to that purpose. *Supra* pp.10-14; *see also Seattle Children's*, 2025 WL 3562151, at *3. While this burden "is not a heavy one[,] … mere handwaving over the Fourth Amendment's requirements cannot carry

16

even [DOJ's] slight burden." *Colo. Children's*, 2026 WL 33398, at *3 (citation omitted).

This requirement is not "new." *Contra* U.S. Br. 39-40. Nor was DOJ informed of it for the first time when the *Boston Children's* court issued its ruling. *Contra id.* It has been black-letter law and standard practice since *Powell* for the government to submit affidavits when seeking to enforce administrative subpoenas. *Supra* p.16. In any event, Seattle Children's specifically alerted DOJ in the Hospital's initial motion, filed the same day as appellee's, that DOJ bore "the initial burden to demonstrate *by affidavit* that it is conducting an investigation for a legitimate purpose and the requested information is relevant to that purpose." Dist.Ct.Dkt.1 at 6-7 (emphasis added).

Yet DOJ made no attempt to meet this burden in appellee's case. DOJ conceded it selected appellee as a subpoena recipient simply because appellee provides gender-affirming care—the very care the Administration seeks to "end." SER-9 (¶7); ER-53. DOJ made the same admission in Seattle Children's case. Dist.Ct.Dkt.2 (¶4). In short, DOJ selected the "targets of [its] investigation out of malice or an intent to harass," *In re Subpoena*, 228 F.3d at 349 (cleaned up), instead of for a proper purpose. On that point, it is telling

17

that DOJ offered *no* affidavit or other evidence of a legitimate purpose. *See* SER-12-23.

Only after two other district judges found virtually identical subpoenas to be improper did DOJ seek to confront its failure of proof in *QueerDoc* via a "praecipe." ER-58-73. But the district court appropriately struck the "praecipe" as improper, ER-18 n.2—a ruling DOJ does not contest. As discussed further below, even considering the stricken declaration, DOJ cannot substantiate a valid investigation. *Infra* pp.28-32.

DOJ is left arguing that its prima facie burden is satisfied by Assistant Attorney General Shumate's June 11, 2025 memorandum (Shumate Memo). It is not. DOJ argues (at 20-22) that because the Shumate Memo "directed the Civil Division to … investigate potential violations of the FDCA and other laws by (1) *pharmaceutical companies* that manufacture drugs used in connection with so-called gender transition and (2) dealers such as *online pharmacies* suspected of illegally selling drugs" (emphases added), DOJ's subpoena to appellee is necessarily proper.

But appellee is neither a pharmaceutical company nor a dealer. And the Shumate Memo offers no legitimate reason for targeting appellee or for the subpoena's sweeping scope. Notably, as appellee highlights (at 27), § 3486

18

authorizes the issuance of subpoenas to investigate FDCA violations that "relate[] to a health care benefit program," 18 U.S.C. §§ 24(a)(2), 3486(a)(1)(A)(i)(I), but appellee does not even submit claims to health care benefit programs. Nor does DOJ explain how the Civil Division has authority to use subpoenas issued under § 3486 to investigate "other laws," ER-55-56; U.S. Br. 10, 21, 31, when its actual "Delegation" states otherwise, *supra* p.3; *see also Reich v. Mont. Sulphur & Chem. Co.*, 32 F.3d 440, 447 (9th Cir. 1994) (cited by DOJ) (agency must show "the documents it requests are relevant to the purpose of an authorized investigation").

Notably, the *Boston Children's* court rejected DOJ's similar argument that Attorney General Bondi's April 22, 2025 memorandum (Bondi Memo) sustained DOJ's burden. The court explained that if the Bondi Memo's instruction to "undertake appropriate investigations" were enough, that "would preclude any form of judicial review as the Government's self-proclaimed say-so would always be sufficient to defeat a motion to quash. This is no logic at all." *Boston Children's*, 800 F. Supp. 3d at 237.

## C. The District Court's Improper Purpose Finding Was Not Clear Error

The district court was correct to examine the subpoena for improper purpose and did not clearly err in finding one. *See* ER-13-19. Subpoena

recipients can establish improper purpose through "specific facts and evidence," such as evidence of improper intent. *United States v. Jose*, 131 F.3d 1325, 1328 (9th Cir. 1997) (en banc) (citation omitted); *see also Garner*, 126 F.3d at 1146. Appellee did just this below.[5]

### 1. *The Administration's conduct proves the improper purpose*

As the district court observed: "No clearer evidence of improper purpose could exist than the Government's own repeated declarations that it seeks to end the very practice it claims to be merely investigating." ER-17.

a. The Administration took aim at transgender individuals immediately after the President's inauguration. Dist.Ct.Dkt.2-1 at 29-41. Executive Order 14187 ("Order") set its sights on gender-affirming care for minors, characterizing it as "maiming and sterilizing" and declaring that such care "must end." Dist.Ct.Dkt.2-1 at 30 (§ 1). The President's directive was clear:

---

[5] Should this Court harbor any doubt about whether appellee established DOJ's improper purpose, the appropriate remedy would be to remand for an evidentiary hearing. Where, as appellee did here, a subpoena recipient "point[s] to specific facts or circumstances plausibly raising an inference of bad faith," the recipient "is entitled to examine" a responsible agency official. *United States v. Clarke*, 573 U.S. 248, 254 (2014). And if, following that hearing, "there remains a substantial question in the [district] court's mind regarding the validity of the government's purpose, it may then grant discovery." *Church of Scientology of Cal.*, 520 F.2d at 824-25.

executive agencies are to use the levers of government to stop gender-affirming care, including through "investigations" targeting "deception of consumers, fraud, and violations of the [FDCA]." Dist.Ct.Dkt.2-1 at 29-31 (§§ 1, 4, 8). When some providers thereafter stopped offering gender-affirming care, the President touted the Order as "having its intended effect." Dist.Ct.Dkt.2-1 at 54-57.

Following and building on the Order's directives, the Attorney General issued the Bondi Memo, vowing to "hold accountable those who prey on vulnerable children and their parents." ER-50. The Bondi Memo made DOJ's position on gender-affirming care clear, calling it "barbaric" and describing "gender dysphoria" as "an illegitimate reason" for "prescribing puberty blockers to a child." ER-48, -51. The Bondi Memo directed the Civil Division to investigate "any violations of the [FDCA] by manufacturers and distributors" of "drug[s] used to facilitate a child's so-called 'gender transition'" and to "pursue investigations under the False Claims Act of false claims submitted to federal healthcare programs." ER-51. The Attorney General resolved that DOJ "will bring" gender-affirming care "to an end." ER-53.

The Shumate Memo, in turn, further implemented the President's and Attorney General's directives. AAG Shumate parroted the Attorney General's

21

orders to "hold accountable those who mutilate" children and "pursue investigations … related to radical gender experimentation." ER-55. He then instructed the Civil Division to "use all available resources to prioritize investigation of doctors [and] hospitals." ER-55.

After appellee, Seattle Children's, and other providers moved to set aside the subpoenas, the Attorney General declared that providers who "mutilated children" would be "held accountable." *Supra* pp.8-9. The same day, the Federal Trade Commission held a "workshop" titled "The Dangers of 'Gender-Affirming Care' for Minors." Dist.Ct.Dkt.21-2 at 1. During that workshop, a DOJ representative said the agency was "[w]orking on it" in response to a suggestion that investigations and prosecutions related to use of allegedly false diagnosis codes may "stop" gender-affirming care, "even in blue states." Dist.Ct.Dkt.21-2 at 29. A few weeks later, the White House celebrated that the Administration had "delivered" on its promise to "end" gender-affirming care, listing additional hospitals that had ceased providing this care. Dist.Ct.Dkt.21-6.

On December 18, 2025—the day before DOJ filed its brief here—the Department of Health and Human Services (HHS) joined the effort. HHS announced a notice of proposed rulemaking intended to "end the practice of

sex rejecting procedures on children." *See HHS Acts to Bar Hospitals from Performing Sex-Rejecting Procedures on Children* (Dec. 18, 2025).[6] The proposed rule would bar any hospital participating in Medicare or Medicaid from offering gender-affirming care. As HHS acknowledges, "[n]early all" hospitals participate in Medicare and Medicaid. *Id.*

The same day, the HHS Secretary issued a "declaration" purporting to "supersede[]" prevailing standards of care for children diagnosed with gender dysphoria with the Administration's view that gender-affirming care "fail[s] to meet professional recognized standards of health care."[7] Robert F. Kennedy, Jr., *Safety, Effectiveness, & Prof. Standards of Care for Sex-Rejecting Procedures on Children & Adolescents* (Dec. 18, 2025).[8]

Most recently, HHS announced by tweet it was referring Seattle Children's to the HHS Office of Inspector General for "failure to meet professional

---

[6] https://www.hhs.gov/press-room/hhs-acts-bar-hospitals-performing-sex-rejecting-procedures-children.html.

[7] The declaration is the subject of a lawsuit brought by 19 States and the District of Columbia. *Oregon v. Kennedy*, 25-cv-2409 (D. Or.).

[8] https://www.hhs.gov/sites/default/files/declaration-pediatric-sex-rejecting-procedures.pdf.

recognized standards of health care" as declared by the Secretary. HHS (@HHSGov), X (Dec. 26, 2025).[9]

Rather than run from its improper purpose, DOJ has embraced it in litigation. After the district court set aside DOJ's subpoena to Seattle Children's, DOJ stated in its motion for reconsideration:

> As expressed by the Attorney General and the President, the Executive Branch has a policy goal of ending gender-related pharmaceutical and surgical treatment of minors. *The Executive Branch can choose to support that policy goal* … in a variety of ways. This includes, of course, *by conducting lawful and appropriate investigations* to determine if federal law has been violated by individuals engaging in potential misconduct connected to the provision of such treatments.

Dist.Ct.Dkt.29 at 11-12 (emphases added). So too, after the District of Massachusetts quashed the subpoena to Boston Children's, DOJ responded by announcing that "this Department of Justice will use every legal and law enforcement tool available to protect innocent children from being mutilated under the guise of 'care.'"[10]

---

[9] https://x.com/HHSGov/status/2004640322580578440.

[10] Solcyre Burga, *Boston Hospital Hails 'Safeguarding' as Judge Blocks Trump Administration's Subpoena of Trans Kids' Medical Records*, Time (Sept. 10, 2025), https://time.com/7316001/transgender-gender-affirming-care-medical-records-subpoena-ruling/.

Using subpoenas to "settle a collateral dispute"—like ending gender-affirming care or regulating the practice of medicine—is not a proper purpose; rather, it is an abuse of authority under *Powell*. 379 U.S. at 58; *see also, e.g.*, *In re Subpoena*, 228 F.3d at 350. Neither § 3486, nor any other statute, authorizes DOJ to issue subpoenas to achieve political ends. Nor does § 3486 authorize DOJ to regulate medical care through pretextual investigations. *Children's Hosp. of Phila.*, 2025 WL 3252648, at *17 ("Congress never authorized a roving mandate to regulate and alter state-licensed medical care."); *see also United States v. Skrmetti*, 605 U.S. 495, 524 (2025) (affording States "wide discretion" to regulate "areas where there is medical and scientific uncertainty" (citation omitted)).

b. DOJ's contrary arguments lack merit. *First*, citing *Lynn v. Biderman*, 536 F.2d 820 (9th Cir. 1976), DOJ asks the Court to ignore appellee's extensive evidence of improper purpose because DOJ says (at 24-26) that it offered a legitimate purpose for the investigation. But in *Biderman*, the court found a legitimate purpose because the agency actually provided one in an affidavit. 536 F.2d at 823. Here, DOJ failed to submit evidence. DOJ has tried to fill the gap after the fact, but courts "may not rely on the post hoc rationalizations by counsel to justify agency action." *FTC v. Atl. Richfield Co.*,

567 F.2d 96, 100 (D.C. Cir. 1977) (involving FTC subpoena).  In any event, DOJ's evolving justifications fail to show a legitimate purpose, as discussed *infra* pp.28-32.

*Biderman* is distinguishable for another reason.  The court there found two purposes for the subpoena—one legitimate and one not.  536 F.2d at 826.  The district court here found the evidence to show only a single (improper) purpose:  "to downsize or eliminate all gender-affirming care."  ER-17.  Because "[t]his is not a case in which the district court found that there were two purposes for the [subpoena]—one statutorily authorized and one not"—and because the district court's improper purpose finding is supported by the evidence, "*Biderman* has no application."  *Burlington N. R.R. Co. v. Off. of Inspector Gen., R.R. Ret. Bd.*, 983 F.2d 631, 640 & n.4 (5th Cir. 1993).

*Second*, DOJ contends (at 27) the district court's finding that the subpoena was issued to end gender-affirming care is "indefensible," but does not explain why.  DOJ never disputes that it issued the subpoena with that goal.  Instead, DOJ resorts to hyperbole, asserting (at 28) that, based on the district court's reasoning, "an administration's 'explicit agenda' on a particular policy necessarily renders any investigation that touches on that policy as pretextual."  As the district court explained, however, the reason the

Administration's public statements demonstrate the subpoena's improper purpose is not because the two coincidentally cover the same subject matter. Rather, as DOJ's own lawyers candidly conceded, it is because those statements *were the basis for* the subpoena, ER-16-17; *see also* SER-9 (¶6), and DOJ, in any event, offers no legitimate investigative purpose that suggests a contrary basis.

*Finally*, DOJ (at 31) feigns confusion at how a subpoena could "'end' the interventions the administration opposes." That is not credible. DOJ knows well that threatening providers with criminal investigation and forced disclosures of extremely sensitive patient and personnel information can and has pressured entities to stop providing gender-affirming care.[11] The Administration has publicly trumpeted this fact. *See* Dist.Ct.Dkt.21-6; *see also Seattle Children's*, 2025 WL 3562151, at *15 (Children's National discontinued such care "because 'of escalating legal and regulatory risks'").

---

[11] *See, e.g.*, Katy Golvala and Dave Altimari, *Connecticut Children's begins 'winding down' youth gender program*, CT Mirror (July 23, 2025), https://ctmirror.org/2025/07/23/ccmc-gender-affirming-care-program/ (discussing Connecticut Children's decision to stop providing gender-affirming care, for reasons including the "government landscape and pressure surrounding [the] care," as stated in a hospital internal communication).

### 2. *DOJ's evolving, after-the-fact explanations prove the improper purpose*

DOJ's shifting, post-hoc rationalizations confirm that "DOJ issued the subpoena first and searched for a justification second," as the district court found. ER-17; *see also Children's Hosp. of Phila.*, 2025 WL 3252648, at *15 (DOJ "has shifted its explanations for the investigation … [as courts] across the Nation have identified problems with the Department's numerous subpoenas.").

At the outset, DOJ told appellee, as it did Seattle Children's, that its "investigation" was triggered by the Administration's directives—notably the Executive Order and the Bondi Memo—and not by any specific information or allegations about the providers. *Supra* pp.7-8, p.17. Attorney General Bondi and AAG Shumate hypothesized in their memos that "manufacturers and distributors" of drugs may be "misbranding by making false claims about the on- or off-label use of … drug[s] used to facilitate a child's so-called 'gender transition,'" ER-51, ER-55-56; and that "physicians prescribing puberty blockers to a child for an illegitimate reason (*e.g.*, gender dysphoria)" may be making false claims "under the False Claims Act," ER-51, ER-55-56.

As subpoena recipients and courts began pointing out that (i) providers like appellee and Seattle Children's are not drug manufacturers or

distributors, (ii) the Civil Division lacks authority to use § 3486 to issue subpoenas in False Claims Act investigations, and (iii) DOJ cannot regulate the practice of medicine, DOJ's theories evolved. In the Declaration of Allan Gordus—filed more than three months after the subpoenas issued—DOJ suggested for the first time that the "fraudulent billing" theory that it had previously tied to the False Claims Act instead could evidence intent under the FDCA. ER-72. DOJ also suggested that appellee could itself be the subject of a misbranding investigation because, according to DOJ, *prescribing* drugs for off-label use could "cause[] the distribution of[] an approved drug with false or misleading labeling for an unapproved use." ER-66.

These novel theories were not only untimely; they are baseless. Appellee's off-label prescribing of drugs to minors—a common and "important" practice in pediatric care[12]—does not violate the FDCA. As DOJ admits (at

---

[12] "[O]ff-label drug use remains an important public health issue for infants, children, and adolescents, because an overwhelming number of drugs still have no information in the labeling for use in pediatrics." Am. Acad. of Pediatrics, *Policy Statement: Off-Label Use of Drugs in Children*, 133 Pediatrics, 563, 563 (2014) (reaffirmed in 2020, *see* 147(2):e2020046425 Pediatrics (2021)); *see also, e.g.*, Lewis A. Grossman, et al., N. Engl. J. Med. (Jan. 7, 2026), https://www.nejm.org/doi/full/10.1056/NEJMp2516086?query=featured_home ("In some fields, such as oncology, pediatrics, and psychiatry, off-label prescribing is so prevalent and necessary that *much care would grind to a halt without it*." (emphasis added)); Helen Christine Allen, et al., *Off-Label*

5), the FDCA only "regulates the development, manufacturing, and distribution of drugs in the United States." And DOJ concedes (at 33) that appellee is not a pharmaceutical manufacturer or distributor. FDA also has made clear that off-label prescription of drugs does *not* violate the FDCA. *See Understanding Unapproved Use of Approved Drugs "Off Label*,*"* FDA (Feb. 5, 2018) ("providers generally may prescribe the drug for an unapproved use when they judge that it is medically appropriate").[13] Moreover, the bulk of the subpoena seeks information about appellee's provision of medical care, its workforce members, and its patients, ER-17-18; *see also* ER-27-29—information unrelated to the manufacture or distribution of drugs.

DOJ's prior statements also undermine its latest arguments about the FDCA's scope. Elsewhere, DOJ has acknowledged that "the FDCA does not generally regulate the practice of medicine," Dist.Ct.Dkt.18 at 8, which includes off-label use of pharmaceuticals, *see Buckman Co. v. Plaintiffs' Legal*

---

*Medication Use In Children, More Common Than We Think: A Systematic Review of the Literature*, 111 J. Okla State Med. Assoc. 776 (Oct. 2018) ("In comparison to adults, there is limited data pertaining to the dosing, efficacy, and safety of medications in children[,]" because of "ethical considerations with conducting pediatric research.").

[13] https://www.fda.gov/patients/learn-about-expanded-access-and-other-treatment-options/understanding-unapproved-use-approved-drugs-label.

30

*Comm.*, 531 U.S. 341, 350 (2001) ("'[O]ff-label' usage of medical devices … is an accepted and necessary corollary of the FDA's mission to regulate in this area without directly interfering with the practice of medicine."). DOJ has also noted that "physicians are permitted to prescribe an FDA-approved drug for an unapproved use." *Univ. of Pittsburgh*, 25-mc-1069 (W.D. Pa. Oct. 2, 2025), Dkt.27-1 (¶12).[14]

On appeal, DOJ again cycles through (at 10-11, 31-39) a number of potential theories, but expands on none of them, leaving the reader with more questions than answers as to what conduct it claims to be unlawful. Is DOJ investigating pharmaceutical companies for misbranding? If so, how are the subpoenas' requests for the medical records of thousands of children *reasonably* relevant? Is it investigating providers for submitting "fraudulent" billing statements? If so, what authority does the Civil Division have to issue subpoenas under § 3486 for that purpose? And what authority does it have to investigate appellee, which does not submit any such claims? *See supra* pp.18-

---

[14] *See also Carson v. Depuy Spine, Inc.*, 365 F. App'x 812, 815 (9th Cir. 2010) ("[O]ff-label use by medical professionals is not merely legitimate but important."); Steven A. Engel, *Whether the Food and Drug Administration Has Jurisdiction over Articles Intended for Use in Lawful Executions*, 43 Op. O.L.C. 81, 85 (2019) ("physicians may, with limited exceptions, prescribe and administer FDA-approved drugs and devices for unapproved uses").

19.  Is it investigating providers for the lawful practice of prescribing drugs off-label?  Or is it investigating "other possible criminal conduct"?  *See* U.S. Br. 38.  If DOJ's purpose were proper, one would expect to see evidence of a clear investigative purpose at the outset.  At the very least, one would expect DOJ to have one now.  But still it does not.

### 3.    *The extraordinary breadth of the subpoena proves the improper purpose*

The subpoena's "oppressive" breadth further confirms its improper purpose.  *Children's Nat'l*, 2026 WL 160792, at *8.  Despite DOJ's efforts to market the subpoena as "routine" (at 1-2), it is far from typical for DOJ to investigate "potential FDCA violations" by issuing suspicionless, blanket subpoenas demanding the private medical records of thousands of patients and the personnel files of countless workforce members.  ER-27-29, ER-71-73.  Nor does DOJ typically announce its subpoenas publicly.  *Supra* pp.8-9.  DOJ identifies no case where it has investigated FDCA offenses in this manner.  None of this satisfies the Fourth Amendment's reasonableness requirement.  Every court to consider the issue has come to the same conclusion:  the subpoenas' exorbitant breadth is intended to pressure providers to "end" gender-affirming care.  ER-18-19; *Boston Children's*, 800 F. Supp. 3d at 238; *Colo. Children's*, 2026 WL 33398, at *4.

32

## III. The Subpoenas Improperly Invade Privacy Interests

DOJ's subpoenas constitute a fishing expedition through thousands of records belonging to uniquely vulnerable children, their families, and their providers. ER-27-29; Dist.Ct.Dkt.2-1 at 2-28 (Requests 2-5, 11-13, 15). The subpoenas call for production of patients' names, social security numbers, addresses, "clinical indications," "diagnoses," and "assessments" (including mental-health information), spanning a five-year period. The subpoenas seek "an intimate window" into the most private aspects of the lives of minor patients and their families. *Carpenter v. United States*, 585 U.S. 296, 310-11 (2018). These documents are "entitled to privacy protection." *United States v. Westinghouse Elec. Corp.*, 638 F.2d 570, 577 (3d Cir. 1980); *see also Eden*, 379 F.3d at 551-54.

DOJ cannot show an interest that "outweighs the individual's privacy interest."[15] *See Eden*, 379 F.3d at 551. In balancing the relative interests, this Court considers, among other things:

> (1) the type of information requested, (2) the potential for harm in any subsequent non-consensual disclosure, (3) the adequacy of safeguards to prevent unauthorized disclosure, (4) the degree of need for access, and (5) whether there is an express statutory

---

[15] Providers may assert their patients' privacy rights. *See, e.g.*, *June Med. Servs. L.L.C. v. Russo*, 591 U.S. 299, 318-19 (2020).

mandate, articulated public policy, or other recognizable public interest militating toward access.

*Id.*; *see also Westinghouse*, 638 F.2d at 578.  For the reasons provided by Seattle Children's in its case, and as two district courts in Pennsylvania have found, each factor weighs against DOJ.  *See* Dist.Ct.Dkt.1 at 9-12; Dist.Ct.Dkt.3 (¶¶23, 32-40); *Children's Hosp. of Phila.*, 2025 WL 3252648, at *16-19; *Univ. of Pittsburgh*, 2025 WL 3724705, at *1-3; *see also Children's Nat'l*, 2026 WL 160792, at *8.

Furthermore, the risk of subsequent use and disclosure of personnel files and medical records poses heightened concerns.  "[F]ierce emotions" and the "long-running controversy over" gender-affirming care raise legitimate fears of violence and retribution directed at minor patients and their families. *Nw. Mem'l Hosp. v. Ashcroft*, 362 F.3d 923, 929, 933 (7th Cir. 2004) (Posner, J.) (affirming decision to quash subpoena for anonymized medical records of abortion patients).

Even if this Court concludes DOJ has some legitimate investigative purpose relevant to some of the subpoena's requests, the Court should set aside Requests 1-5, 11-13, and 15, or at a minimum, remand for consideration of whether providers' and patients' privacy interests outweigh DOJ's need (if any) for the documents.  To facilitate honest dialogue between providers and

34

their patients, which is critical to patient care, providers must be able to assure themselves and patients that their private information will be protected absent a proper, articulated need.  Dist.Ct.Dkt.3 (¶¶30-33).

## CONCLUSION

The Court should affirm.

Respectfully submitted,

JEFFREY B. COOPERSMITH
CORR CRONIN LLP
  *1015 Second Avenue, Floor 10*
  *Seattle, Washington 98104*
  *(206) 625-8600*

/s/ *Amy Mason Saharia*
DAVID M. ZINN
CHRISTOPHER N. MANNING
AMY MASON SAHARIA
  *Counsel of Record*
DANA B. KINEL
PATRICK C. HYNDS
WILLIAMS & CONNOLLY LLP
  *680 Maine Avenue SW*
  *Washington, DC 20024*
  *(202) 434-5000*
  *asaharia@wc.com*

JANUARY 23, 2026

## CERTIFICATE OF COMPLIANCE
## WITH TYPEFACE AND WORD-COUNT LIMITATIONS

I, Amy Mason Saharia, counsel for amicus Seattle Children's Hospital and a member of the Bar of this Court, certify, pursuant to Federal Rule of Appellate Procedure 32(g)(1) and Ninth Circuit Rule 32, that the attached Brief of Amicus Seattle Children's Hospital, is proportionately spaced, has a typeface of 14 points or more, and contains 6,983 words.

*/s/ Amy Mason Saharia*
AMY MASON SAHARIA

JANUARY 23, 2026

## CERTIFICATE OF SERVICE

I, Amy Mason Saharia, counsel for amicus Seattle Children's Hospital and a member of the Bar of this Court, certify, that, on January 23, 2026, a copy of the attached Brief of Amicus Seattle Children's Hospital was filed with the Clerk through the Court's electronic filing system. I further certify that all parties required to be served have been served.

*/s/ Amy Mason Saharia*
AMY MASON SAHARIA

JANUARY 23, 2026