**No. 25-7384**

# In the United States Court of Appeals for the Ninth Circuit

QUEERDOC, PLLC,

*Movant-Appellee,*

*v.*

UNITED STATES DEPARTMENT OF JUSTICE,

*Respondent-Appellant.*

*On Appeal from the United States District Court for the Western District of Washington, No. 2:25-mc-42 (Hon. Jamal N. Whitehead)*

**BRIEF OF AMICUS CURIAE SEATTLE CHILDREN'S HOSPITAL IN SUPPORT OF PETITION FOR REHEARING EN BANC**

JEFFREY B. COOPERSMITH
CORR CRONIN LLP
*1015 Second Avenue, Floor 10*
*Seattle, Washington 98104*
*(206) 625-8600*

DAVID M. ZINN
CHRISTOPHER N. MANNING
AMY MASON SAHARIA
*Counsel of Record*
PATRICK C. HYNDS
MIKAELA E. JOHNSON
WILLIAMS & CONNOLLY LLP
*680 Maine Avenue SW*
*Washington, DC 20024*
*(202) 434-5000*
*asaharia@wc.com*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, amicus Seattle Children's Hospital states that: (1) Seattle Children's Hospital is a Washington nonprofit corporation; (2) Seattle Children's Hospital's sole corporate member is Seattle Children's Healthcare System, a Washington nonprofit corporation; and (3) no publicly held corporation owns 10% or more of Seattle Children's Hospital.

*<u>/s/ Amy Mason Saharia</u>*
AMY MASON SAHARIA
WILLIAMS & CONNOLLY LLP
*680 Maine Avenue SW*
*Washington, DC 20024*
*(202) 434-5000*
*asaharia@wc.com*

OCTOBER 8, 2026

# TABLE OF CONTENTS

Page

STATEMENT OF INTEREST .......... 1

INTRODUCTION AND SUMMARY OF ARGUMENT .......... 2

ARGUMENT .......... 4

I. These Subpoenas Are Unprecedented in Our Nation's History .......... 4

II. The Panel Decision Renders Judicial Review of Administrative Subpoenas Illusory .......... 13

CONCLUSION .......... 16

## TABLE OF AUTHORITIES

Page

### CASES

*Carpenter v. United States*, 585 U.S. 296 (2018) ..... 7

*CFPB v. Accrediting Council for Indep. Colls. & Schs.*, 854 F.3d 683 (D.C. Cir. 2017) ..... 13

*Coe v. Blanche*, No. 26-cv-4641 (S.D.N.Y. Jul. 6, 2026), Dkt. 75 ..... 6

*Doe v. United States*, 253 F.3d 256 (6th Cir. 2001) ..... 8

*In re 2025 Children's Hosp. of L.A. Subpoena*, No. 25-11183 (C.D. Cal. Nov. 21, 2025), Dkt. 1 ..... 5, 6

*In re 2025 Subpoena to Children's Nat'l Hosp. ("Children's Nat'l")*, 2026 WL 160792 (D. Md. Jan. 21, 2026) ..... 6

*In re 2025 UPMC Subpoena ("Univ. of Pittsburgh")*, 2025 WL 3724705 (W.D. Pa. Dec. 24, 2025) ..... 6

*In re Admin. Subpoena No. 25-1431-019 ("Boston Children's")*, 800 F. Supp. 3d 229 (D. Mass. 2025) ..... 6

*In re Dep't of Just. Admin. Subpoena No. 25-1431-030 ("Colo. Children's")*, 2026 WL 33398 (D. Colo. Jan. 5, 2026) ..... 6

*In re: Motion to Quash Admin. Subpoena to Rhode Island Hosp.*, 836 F. Supp. 3d 459 (D.R.I. 2026) ..... 6

*In re Subpoena Duces Tecum*, 228 F.3d 341 (4th Cir. 2000) ..... 7

*In re Subpoena Duces Tecum No. 25-1431-016*, 2025 WL 3562151 (W.D. Wash. Sept. 3, 2025) ..... 2

*In re: Subpoena Duces Tecum No. 25-1431-017 ("Children's Minnesota")*, 26-mc-26 (D. Minn. May 4, 2026), Dkts. 1, 3 ..... 6

*Okla. Press Publ'g Co. v. Walling*, 327 U.S. 186 (1946) ..... 14

Page

Cases—continued:

*United States v. Golden Valley Elec. Ass'n*,
689 F.3d 1108 (9th Cir. 2012) ........ 14

*United States v. LaSalle Nat'l Bank*, 437 U.S. 298 (1978) ........ 14

*United States v. Morton Salt Co.*, 338 U.S. 632 (1950) ........ 14

*Wearly v. FTC*, 616 F.2d 662 (3d Cir. 1980) ........ 13

*Z.A. v. Lucile Salter Packard Children's Hosp. at Stanford*,
No. 26-cv-04998 (N.D. Cal. June 3, 2026), Dkt. 31 ........ 5

## CONSTITUTION, STATUTES, AND REGULATION

U.S. Const. amend. IV ........ 14

18 U.S.C. § 3486 ........ 9

21 U.S.C. § 331 ........ 9

21 U.S.C. § 352 ........ 9

Fed. R. App. P. 29 ........ 1

Exec. Order No. 14187, 90 Fed. Reg. 8,771 (Jan. 28, 2025) ........ 9

## OTHER AUTHORITIES

Federal Trade Commission, *The Dangers of "Gender-Affirming Care" for Minors* (July 9, 2025) ........ 10

Fox News, *Todd Blanche rejects calls for new AI laws: "We don't need it,"* (Sept. 27, 2026) ........ 8, 13

Joseph Goldstein, *Mount Sinai Agrees to Pay a Fine Over Adolescent Gender-Transition Care*, N.Y. Times (Sept. 4, 2026) ........ 12

Amy Harmon, *Hospitals Shut Youth Gender Clinics in Deal with Trump Administration*, N.Y. Times (Sept. 22, 2026) ........ 12

Page

Other Authorities—continued:

NYU Langone Statement on Settlement with DOJ ........................................12

Ben Penn & Ian Lopez, *Justice Department Expands Gender Care Probe as Hospital Fights* (Aug. 20, 2025) ........................................8

Penn Live, *UPMC settles fight with Trump Administration over gender care for minors* (Sept. 18, 2026) ........................................12

U.S. Dep't of Just., *Department of Justice Subpoenas Doctors and Clinics Involved in Performing Transgender Medical Procedures on Children* (July 9, 2025) ........................................10

U.S. Dep't of Just., Justice Manual § 1-7.400 ........................................10

U.S. Dep't of Just., *Settlement Agreement with The Cleveland Clinic Foundation* ........................................12

U.S. Dep't of Just., *Settlement Agreement with Texas Children's Hospital* ........................................11

UPMC Settlement Agreement ........................................12

The White House, *President Trump Promised to End Child Sexual Mutilation – and He Delivered* (July 25, 2025) ........................................11

## STATEMENT OF INTEREST[1]

Founded in 1907, Seattle Children's Hospital is the preeminent children's medical provider in the Pacific Northwest, serving patients from Washington, Wyoming, Alaska, Montana, Idaho, and beyond. The Hospital handles more than half a million patient visits annually. Its services cover virtually every pediatric specialty, from oncology to transplant surgeries to neonatal intensive care. Like many of the Nation's premiere pediatric hospitals, Seattle Children's has provided gender-affirming care to minor patients with gender dysphoria—a diagnosis characterized by clinically significant distress, such as anxiety, depression, and/or suicidal ideation.

The Hospital is one of more than twenty medical providers that received a criminal administrative subpoena from the Civil Division at the Department of Justice (DOJ) last year. All are virtually identical to appellee's subpoena. Among other things, the subpoenas seek troves of sensitive information about thousands of minor patients (*e.g.*, all of their medical records) and thousands of individuals who work for institutions that provide gender-affirming care

[1] Pursuant to Federal Rule of Appellate Procedure 29(a)(4)(E), amicus certifies that no person or entity, other than amicus curiae, its members, or its counsel, made a monetary contribution to the preparation or submission of this brief or authored this brief in whole or in part. The parties have consented to the filing of this brief.

(*e.g.*, all of their personnel files). Like appellee, Seattle Children's moved to set aside the administrative subpoena. And like appellee, Seattle Children's prevailed in the district court. *In re Subpoena Duces Tecum No. 25-1431-016*, 2025 WL 3562151 (W.D. Wash. Sept. 3, 2025).

DOJ approached its district court losses differently. In appellee's case, it sought expedited appellate review. In Seattle Children's case, by contrast, DOJ moved to alter or amend the judgment—thus delaying appellate review. As a result, Seattle Children's case lags behind this one. The district court in Seattle Children's case has since denied DOJ's motion to alter or amend the judgment, 2026 WL 1102159 (W.D. Wash. Apr. 23, 2026), and DOJ appealed, *see* No. 26-4009 (9th Cir.). The appeal is currently administratively closed.

The facts and procedural history of Seattle Children's case distinguish it from this case in material respects. Nonetheless, the legal framework adopted by the *QueerDoc* panel involves questions of exceptional importance to Seattle Children's and its patients, patients' families, and workforce.

## INTRODUCTION AND SUMMARY OF ARGUMENT

DOJ's subpoenas to QueerDoc, Seattle Children's, and providers across the country present questions of national importance that warrant the full Court's attention.

The Supreme Court cautioned in *United States v. Powell* that agencies may not issue administrative subpoenas "for an improper purpose," such as "harass[ment]," "to settle a collateral dispute," "or for any other purpose reflecting on the good faith of the particular investigation." 379 U.S. 48, 58 (1964). DOJ has disregarded that caution. The government has repeatedly made clear that its subpoenas were intended to coerce providers into stopping gender-affirming care. DOJ served the subpoenas en masse and without a clear investigative rationale, and it has continually revised its explanation for its putative "investigation." Administration officials have bragged when their coercion campaign worked and have withdrawn the supposedly critical subpoenas to institutions that agree via "settlements" to cease this care. "It is hard to imagine clearer evidence that DOJ issued the subpoena[s] … in bad faith." Op. 95 (Paez, J., dissenting). Indeed, district courts around the country, like the court below, uniformly quashed all or parts of these subpoenas.

This case is of exceptional importance to Seattle Children's and other children's hospitals across the Nation. It is equally important to the privacy interests of the patients, doctors, nurses, and medical staff whose confidential records have been requested. In addition, the matter raises significant questions about this Circuit's application of the long-established *Powell* standard

governing the enforcement of administrative subpoenas, including the appropriate standard of appellate review and the judiciary's role in enforcement proceedings.

The Court should grant appellee's petition for rehearing en banc.

## ARGUMENT

DOJ's unprecedented campaign to use administrative subpoenas to pressure hospitals into ending gender-affirming care involves questions of national importance: namely, whether DOJ can use administrative subpoenas not to investigate any wrongdoing but to achieve a political end and whether the *Powell* standard affords any meaningful judicial review of DOJ's subpoena authority. The majority's decision fails to defer to or grapple with the district court's factual finding that DOJ issued this subpoena to pressure its recipient into ending gender-affirming care. It enables the government to use administrative subpoenas as a tool to coerce compliance with its policy views, while leaving courts effectively powerless to police statutory and constitutional limits on administrative subpoenas.

### I. These Subpoenas Are Unprecedented in Our Nation's History

To the best of our knowledge, DOJ has never before served administrative subpoenas seeking the medical records of many thousands of children (or even adults for that matter) from hospitals nationwide. DOJ has never before

"settled" with recipients of such subpoenas and conditioned settlement on the hospitals' agreeing to stop providing medical treatment permitted under state law. And DOJ has never engaged in such conduct while at the same time pronouncing the Administration's hostility to individuals receiving such care and the medical professionals providing it.

Every district court that has reviewed this evidence has found that the subpoenas are invalid in whole or in part. *See* Pet. 6 n.3. The panel majority, applying de novo review, reached the opposite conclusion. The en banc Court should review the legality of these unprecedented subpoenas.

1. In 2025, DOJ issued virtually identical administrative subpoenas to, among others, the most prominent children's hospitals in the country. Just within the Ninth Circuit, recipients of these subpoenas include Seattle Children's, appellee, Children's Hospital Los Angeles, and Lucile Packard Children's Hospital Stanford.[2] Outside the Ninth Circuit, targeted hospitals include Boston Children's Hospital, Cincinnati Children's Hospital, Children's Hospital of Philadelphia, Children's National Hospital, Colorado Children's,

[2] *In re 2025 Children's Hosp. of L.A. Subpoena*, No. 25-11183 (C.D. Cal. Nov. 21, 2025), Dkt. 1; *Z.A. v. Lucile Salter Packard Children's Hosp. at Stanford*, No. 26-cv-04998 (N.D. Cal. June 3, 2026), Dkt. 31 at 8-9.

Children's Minnesota, NYU Langone; Rhode Island Hospital; and University of Pittsburgh Medical Center.[3]

Many of these hospitals provide the highest levels of pediatric care to the sickest children in our country, while conducting groundbreaking pediatric research and training the next generation of pediatric specialists. Patient confidentiality is central to these missions. To effectively and ethically provide treatment, hospitals need patients and their families to feel secure sharing sensitive information about their physical and mental health.

2. The scope of each subpoena is staggering. Covering 2020 to present, the subpoenas seek extraordinary amounts of information about minor patients: the identities of every patient prescribed puberty blockers or hormone therapy (by name, date of birth, SSN number, address, and parent/guardian

[3] *In re Admin. Subpoena No. 25-1431-019 ("Boston Children's")*, 800 F. Supp. 3d 229 (D. Mass. 2025); *In re: Admin. Subpoena No. 25-1431-033 ("Cincinnati Children's")*, 26-mc-18 (S.D. Ohio), Dkt. 1; *Children's Hosp. of Phila.*, 2025 WL 3252648 (E.D. Pa. Nov. 21, 2025); *In re 2025 Subpoena to Children's Nat'l Hosp. ("Children's Nat'l")*, 2026 WL 160792 (D. Md. Jan. 21, 2026); *In re Dep't of Just. Admin. Subpoena No. 25-1431-030 ("Colo. Children's")*, 2026 WL 33398 (D. Colo. Jan. 5, 2026) (report and recommendation); *In re: Subpoena Duces Tecum No. 25-1431-017 ("Children's Minnesota")*, 26-mc-26 (D. Minn. May 4, 2026), Dkts. 1, 3; *Coe v. Blanche*, No. 26-cv-4641 (S.D.N.Y. Jul. 6, 2026), Dkt. 75 at 7; *In re: Motion to Quash Admin. Subpoena to Rhode Island Hosp.*, 836 F. Supp. 3d 459 (D.R.I. 2026); *In re 2025 UPMC Subpoena ("Univ. of Pittsburgh")*, 2025 WL 3724705 (W.D. Pa. Dec. 24, 2025).

information), their diagnoses or medical evaluations, mental health assessments, and their full medical records. The requested documents provide "an intimate window" into the most private aspects of the lives of patients and their families. *Carpenter v. United States*, 585 U.S. 296, 311 (2018). In Seattle Children's case, the subpoena covers approximately 3,100 patients. Dist.Ct.Dkt.3 ¶ 38.[4] Nationwide, the children implicated by DOJ's dragnet undoubtedly number in the tens of thousands.

Additionally, the subpoenas request confidential personnel files for thousands of employees of medical providers, including all executives and management employees with authority to direct any aspect of their recipients' affairs, all employees with authority to prescribe medications or perform medical evaluations, and all employees engaged in billing activities. Seattle Children's conservatively estimates that these requests would cover several *thousand* of its current workforce members. Dist.Ct.Dkt.3 ¶¶ 17-18.

To be sure, DOJ previously has used HIPAA subpoenas to obtain medical records when investigating potential criminal activity by the patients' medical providers. *See, e.g.*, *In re Subpoena Duces Tecum*, 228 F.3d 341, 344-

[4] All references to "Dist.Ct.Dkt.#" are to the docket in Seattle Children's case, 25-mc-41 (W.D. Wash.).

45 (4th Cir. 2000); *Doe v. United States*, 253 F.3d 256, 260 (6th Cir. 2001). Here, however, DOJ attorneys expressly told subpoena recipients, including Seattle Children's and appellee, that the subpoenas were not prompted by any specific information or allegations concerning the recipients. Dist.Ct.Dkt.2 ¶ 4; *see* Op. 39. Instead, DOJ attorneys reported that DOJ issued the subpoenas "because of" an Executive Order and Attorney General memorandum (*see infra* p. 9-10) and because the recipients provide gender-affirming care.

In other words, DOJ decided to subpoena private medical files of children without having *any* information that the subpoena recipients had engaged in wrongdoing. That decision is shocking. Unsurprisingly, a media report indicates that the former director of DOJ's Consumer Protection Branch refused to sign the subpoenas.[5] As recently as September 27, 2026, Attorney General Todd Blanche acknowledged that "not everything that happened that's bad is a crime" but said that when it comes to gender-affirming care: "Right now, we're just trying to stop it."[6]

---

[5] Ben Penn & Ian Lopez, *Justice Department Expands Gender Care Probe as Hospital Fights* (Aug. 20, 2025), https://news.bloomberglaw.com/us-law-week/justice-department-expands-gender-care-probe-as-hospital-fights.

[6] Fox News, *Todd Blanche rejects calls for new AI laws: "We don't need it,"* at 5:18-5:21, 6:00-6:10 (Sept. 27, 2026), https://www.foxnews.com/video/6405698232112.

The DOJ's Civil Division has contorted itself over the past year to articulate a coherent rationale for requesting minors' medical records. In doing so, it has fallen back on the suggestion that the subpoenaed documents provide information as to how providers "billed for medical services." Op. 63 (Paez, J., dissenting). But the Civil Division has authority to issue subpoenas under 18 U.S.C. § 3486 only to investigate violations of the FDCA—and false billing is, even by DOJ's admission, not an FDCA violation. *See* 21 U.S.C. §§ 331(a)-(b), 352; Op. 11-12; Op. 63 (Paez, J., dissenting). And DOJ has strained to explain why it needs patients' medical files to investigate purported misbranding by pharmaceutical manufacturers and distributors under the FDCA—a statute that all agree does not regulate doctors' prescribing decisions. DOJ had no legitimate rationale when it issued the subpoenas and has spent the past year searching for one.

3. The Administration's conduct surrounding these subpoenas is equally irregular. Eight days after taking office, President Trump issued Executive Order 14187, titled "Protecting Children from Chemical and Surgical Mutilation." In it, the President stated that the "mutilation" of children through gender-affirming care "must end." *Id.* §§ 1-2. Subsequently, DOJ officials—including then-Attorney General Pam Bondi and Assistant Attorney General

Brett Shumate—announced DOJ's goal of ending gender-affirming care and instructed the Department to conduct investigations. *See* ER-48-53 (Bondi Memo) ("[T]he Department of Justice will bring these practices to an end."); ER-54-57 (Shumate Memo) (promising to "pursue investigations" related to "radical gender experimentation"); *see also* Op. 70-71 (Paez, J., dissenting).

DOJ usually prefers to keep its criminal investigations confidential. *See* DOJ Manual § 1-7.400. Not here. DOJ publicly announced that it "sent more than 20 subpoenas to doctors and clinics," and vowed that "[m]edical professionals and organizations" providing gender-affirming care would "be held accountable by this Department of Justice."[7] *See also* Op. 71 (Paez, J., dissenting). That same day, DOJ's chief of staff announced that DOJ would use "all of the tools at the Department of Justice" to "take down" the gender-affirming care "industry."[8] This approach, as Judge Paez observed, "runs counter to

[7] DOJ, *Department of Justice Subpoenas Doctors and Clinics Involved in Performing Transgender Medical Procedures on Children* (July 9, 2025), https://www.justice.gov/opa/pr/department-justice-subpoenas-doctors-and-clinics-involved-performing-transgender-medical.

[8] FTC, *The Dangers of "Gender-Affirming Care" for Minors* at 49 (Jul. 9, 2025), https://www.ftc.gov/system/files/ftc_gov/pdf/FTC-The-Dangers-of-Gender-Affirming-Care-for-Minors-Transcript.pdf.

longstanding agency policies and norms that prioritize confidentiality." Op. 78.

In the midst of this pressure campaign, numerous medical providers stopped providing gender-affirming care. The Administration then bragged that the subpoenas achieved their intended effect. Listing twenty providers that had shuttered gender-affirming care services, the President in July 2025 touted that "he delivered" on the "promise[] to end the barbaric, pseudoscientific practice."[9]

DOJ has since entered into "settlement" agreements with hospitals, including Texas Children's, Cleveland Clinic, Mt. Sinai Health System, NYU Langone Health, Connecticut Children's Medical Center, and University of Pittsburgh Medical Center. Those settlement agreements prohibit hospitals from offering gender-affirming care; for example, some have shuttered their gender clinics permanently,[10] and others have agreed not to provide gender-

[9] *President Trump Promised to End Child Sexual Mutilation – and He Delivered*, The White House (July 25, 2025), https://www.whitehouse.gov/releases/2025/07/president-trump-promised-to-end-child-sexual-mutilation-and-he-delivered/.

[10] DOJ, *Settlement Agreement with Texas Children's Hospital*, ¶ 12, https://www.justice.gov/opa/media/1456396/dl?inline.

affirming care for decades.[11] These agreements further require providers to furnish free medical care for individuals who choose to "detransition," and/or pay fines to the Administration.[12] In return, DOJ released hospitals from their administrative subpoenas.[13] NYU expressly announced that the settlement "remov[ed] the threat that NYU Langone would have to provide the confidential information previously demanded about patients under 18 who received gender-affirming care at our institution."[14] Attorney General Blanche

[11] DOJ, *Settlement Agreement with The Cleveland Clinic Foundation*, ¶¶ 7, 24, https://www.justice.gov/civil/media/1444826/dl?inline; Penn Live, *UPMC settles fight with Trump Administration over gender care for minors* (Sept. 18, 2026), https://www.pennlive.com/news/2026/09/upmc-settles-fight-with-trump-administration-over-gender-care-for-minors.html.

[12] Amy Harmon, *Hospitals Shut Youth Gender Clinics in Deal with Trump Administration*, N.Y. Times (Sept. 22, 2026), https://www.nytimes.com/2026/09/22/us/trangender-youths-hospital-settlements.html.

[13] *See, e.g.*, UPMC Settlement Agreement ¶ 3, https://inside.upmc.com/wp-content/uploads/sites/10/2026/09/UPMC-DOJ-Agreement-dated-September-18-2026.pdf; NYU Langone Statement on Settlement with DOJ, https://nyulangone.org/public-notices/dojsettlement; Joseph Goldstein, *Mount Sinai Agrees to Pay a Fine Over Adolescent Gender-Transition Care*, N.Y. Times (Sept. 4, 2026), https://www.nytimes.com/2026/09/04/nyregion/adolescent-trans-care-mount-sinai-trump.html.

[14] NYU Langone Statement on Settlement with DOJ, https://nyulangone.org/public-notices/dojsettlement.

trumpeted that the settling hospitals' gender-affirming care programs "are not coming back."[15]

## II. The Panel Decision Renders Judicial Review of Administrative Subpoenas Illusory

The panel decision guts the judiciary's role in administrative subpoena proceedings. To be sure, courts do not frequently invalidate administrative subpoenas. The government's bar is low. But, as reflected by the seven unanimous district court rulings addressing the at-issue subpoenas, the rule of law still applies. *See* Pet. 3 n.1. When courts review administrative subpoenas, their "role is not that of a mere rubber stamp, but of an independent reviewing authority called upon to insure the integrity of the proceeding." *Wearly v. FTC*, 616 F.2d 662, 665 (3d Cir. 1980); *see also CFPB v. Accrediting Council for Indep. Colls. & Schs.*, 854 F.3d 683, 689 (D.C. Cir. 2017) (similar). When it enacted § 3486, Congress placed the judiciary between the Executive and subpoena recipients. Subpoenas issued under § 3486 are not self-executing; recipients need not comply unless and until a federal court enforces the subpoena. Op. 20-21.

---

[15] *Fox News*, *supra* n.6, at 4:28-5:06.

Accordingly, it is the judiciary's duty to determine whether administrative subpoenas fall within statutory and constitutional bounds. The Executive "may exercise only that authority granted by Congress." *United States v. LaSalle Nat'l Bank*, 437 U.S. 298, 316 n.18 (1978). And, of course, administrative subpoenas must comport with the Constitution, including the Fourth Amendment. *United States v. Golden Valley Elec. Ass'n*, 689 F.3d 1108, 1113 (9th Cir. 2012); *see also Okla. Press Publ'g Co. v. Walling*, 327 U.S. 186, 213 (1946); *United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950).

By invoking the presumption of regularity to uphold the at-issue subpoena, the panel decision neutered that duty. *See* Op. 8, 38-40. The presumption of regularity does not compel courts to blind themselves to compelling evidence of irregularity. For all the reasons discussed above, there is nothing regular about these subpoenas. DOJ copied and pasted materially identical subpoenas to medical providers around the country and publicly touted the intended effects. The subpoenas are unapparelled in scope—requiring the disclosure of thousands of records belonging to uniquely vulnerable children, their families, and their providers. And the subpoenas are coercive in effect—pressuring recipients to "settle" rather than disclose

their patients' identities to a hostile adversary. The district court understood all this; the panel majority, because it deferred to the Executive, did not.

The panel decision also emphasized the President's Article II authority to direct law enforcement priorities. *See* Op. 41-43. The relevant question, however, is not whether the President can direct a law enforcement investigation to achieve policy outcomes. The district court never held that he cannot. The question instead is whether DOJ can deploy a law enforcement tool—a subpoena—to *pressure* the subpoena recipient to end medical treatment disfavored by the Executive. Under *Powell*, the answer to that question is no. Using subpoenas to "settle a collateral dispute"—like ending gender-affirming care—is not a proper purpose. It is an abuse of authority.

The district court correctly found on this record that DOJ's purpose in issuing this absurdly broad and privacy-invading subpoena was an improper one. That finding was entitled to deference. *See* Pet. 6-12. Given the record described above, it is the only plausible finding. The majority's assertion that there was "no evidence of impropriety besides the Administration's public statements and directives," Op. 40, overlooks the many signs of irregularity described above. The Administration's statements and directives merely say the quiet part out loud. *See* Op. 68-73 (Paez, J., dissenting).

The panel decision authorizes judges to ignore a record replete with evidence of bad faith so long as an administrative subpoena aligns with an executive policy goal. *See* Pet. 13-15. That cannot be the law. The en banc Court should intervene.

## CONCLUSION

Seattle Children's urges the Court to grant appellee's petition for rehearing en banc.

Respectfully submitted,

*/S/ Amy Mason Saharia*


DAVID M. ZINN
CHRISTOPHER N. MANNING
AMY MASON SAHARIA
*Counsel of Record*
PATRICK C. HYNDS
MIKAELA E. JOHNSON
WILLIAMS & CONNOLLY LLP
*680 Maine Avenue SW*
*Washington, DC 20024*
*(202) 434-5000*
*asaharia@wc.com*

JEFFREY B. COOPERSMITH
CORR CRONIN LLP
*1015 Second Avenue, Floor 10*
*Seattle, Washington 98104*
*(206) 625-8600*


OCTOBER 8, 2026

## CERTIFICATE OF COMPLIANCE WITH TYPEFACE AND WORD-COUNT LIMITATIONS

I, Amy Mason Saharia, counsel for amicus Seattle Children's Hospital and a member of the Bar of this Court, certify, pursuant to Federal Rule of Appellate Procedure 32(g)(1) and Ninth Circuit Rule 32, that the attached Brief of Amicus Seattle Children's Hospital, is proportionately spaced, has a typeface of 14 points or more, and contains 2,989 words.

*/s/ Amy Mason Saharia*
AMY MASON SAHARIA

OCTOBER 8, 2026

## CERTIFICATE OF SERVICE

I, Amy Mason Saharia, counsel for amicus Seattle Children's Hospital and a member of the Bar of this Court, certify, that, October 8, 2026, a copy of the attached Brief of Amicus Curiae Seattle Children's Hospital was filed with the Clerk through the Court's electronic filing system. I further certify that all parties required to be served have been served.

*/s/ Amy Mason Saharia*
AMY MASON SAHARIA

OCTOBER 8, 2026