NO. 25-7384

**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

QUEERDOC, PLLC,

Movant-Appellee,

v.

U.S. DEPARTMENT OF JUSTICE,

Respondent-Appellant.

On Appeal from the U.S. District Court for the Western District of Washington
No. 2:25-MC-00042-JNW
The Honorable Jamal N. Whitehead, U.S. District Court Judge

# BRIEF OF AMICI CURIAE WASHINGTON, MASSACHUSETTS, ARIZONA, CALIFORNIA, COLORADO, CONNECTICUT, DELAWARE, THE DISTRICT OF COLUMBIA, ILLINOIS, MAINE, MARYLAND, MICHIGAN, MINNESOTA, NEVADA, NEW JERSEY, NEW MEXICO, NEW YORK, OREGON, RHODE ISLAND, VERMONT, AND VIRGINIA IN SUPPORT OF MOVANT-APPELLEE QUEERDOC, PLLC'S PETITION FOR REHEARING EN BANC

NICHOLAS W. BROWN
*Attorney General of Washington*

WILLIAM MCGINTY, WSBA #41868
CRISTINA SEPE, WSBA #53609
*Deputy Solicitors General*
LAURYN K. FRAAS, WSBA #53238
*Assistant Attorney General*
800 Fifth Avenue, Suite 2000
Seattle, WA 98504
William.McGinty@atg.wa.gov
*Counsel for Washington*

ANDREA JOY CAMPBELL
*Attorney General of Massachusetts*

ALLYSON SLATER
*Director, Reproductive Justice Unit*
ADAM M. CAMBIER
MORGAN CARMEN
JAK KUNDL
*Assistant Attorneys General*
One Ashburton Place
Boston, MA 02108
Adam.Cambier@mass.gov
*Counsel for Massachusetts*

# TABLE OF CONTENTS


I. INTRODUCTION AND STATEMENT OF INTERESTS ............................. 1

II. ARGUMENT ............................................................................................ 5

A. The Federal Government Seeks to Interfere with Amici States' Authority to Regulate the Practice of Medicine ......................................... 5

B. The Use of Investigative Power to End Lawful Healthcare Should Be Rejected .................................................................................... 14

III. CONCLUSION ..................................................................................... 17

# TABLE OF AUTHORITIES

Cases

*Buckman Co. v. Pls.' Legal Comm.*,
531 U.S. 341 (2001) ....................................................................................6

*Dent v. West Virginia*,
129 U.S. 114 (1889) ....................................................................................5

*Gonzales v. Carhart*,
550 U.S. 124 (2007) ....................................................................................2

*Gonzales v. Oregon*,
546 U.S. 243 (2006) ....................................................................................6

*Hillsborough Cnty., Fla. v. Automated Med. Lab'ys, Inc.*,
471 U.S. 707 (1985) ................................................................................5, 6

*In re 2025 UPMC Subpoena*,
2:25-mc-01069-CB, 2025 WL 3724705 (W.D. Pa. Dec. 24, 2025),
*appeal dismissed*, No. 26-1401, 26-1545 (3d Cir. Aug. 12, 2026) ..... 3, 11, 14, 16

*In re Admin. Subpoena 25-1431-032 to R.I. Hosp.*,
836 F. Supp. 3d 459 (D.R.I. May 14, 2026),
*appeal filed*, No. 26-1568 (1st Cir. May 19, 2026) ...............................................3

*In re Dep't of Just. Admin. Subpoena No. 25-1431-030*,
No. 1:25-mc-00063-SKC-CYC, 2026 WL 33398
(D. Colo. Jan. 5, 2026) ..................................................................... 2, 14, 16

*In re Subpoena Duces Tecum No. 25-1431-016*,
No. 2:25-mc-00041-JHC, 2025 WL 3562151 (W.D. Wash. Sep. 3,
2025), *appeal filed*, No. 26-4009 (9th Cir.) ............................................ 2, 14, 16

*In re Subpoena No. 25-1431-014*,
810 F. Supp. 3d 555 (E.D. Pa. 2025),
*appeal dismissed*, No. 26-1134 (3d Cir. May 12, 2026) .......................................3

*In re Subpoena No. 25-1431-019*,
800 F. Supp. 3d 229 (D. Mass. 2025)................................................ 3, 10, 11, 16

*In re 2025 Subpoena to Children's National Hospital*,
No. 1:25-cv-03780, 2026 WL 160792 (D. Md. Jan. 21, 2026),
*appeal filed*, No. 26-1104 (4th Cir. Jan. 28, 2026) ........................................ 3, 16

*Linder v. United States*,
268 U.S. 5 (1925) ..........................................................................................5

*Massachusetts v. Trump*,
836 F. Supp. 3d 385 (D. Mass. 2026)..................................................................12

*Medtronic, Inc. v. Lohr*,
518 U.S. 470 (1996) ........................................................................................5

*Metro. Life Ins. Co. v. Massachusetts*,
471 U.S. 724 (1985) ........................................................................................5

*Novedades Y Servicios, Inc. v. Fin. Crimes Enf't Network*,
181 F.4th 961 (9th Cir. 2026)...........................................................................15

*Oregon v. Kennedy*,
831 F. Supp. 3d 1048 (D. Or. 2026)....................................................................13

*Oregon v. Kennedy*,
No. 6:25-cv-02409-MTK, 2026 WL 2766893 (D. Or. Sept. 17, 2026)...............13

*PFLAG, Inc. v. Trump*,
766 F. Supp. 3d 535 (D. Md. 2025),
*appeal filed*, No. 25-1279 (4th Cir. Mar. 24, 2025) ............................................12

*Slaughter-House Cases*,
83 U.S. 36 (1872) ............................................................................................5

*United States v. LaSalle Nat'l Bank*,
437 U.S. 298 (1978) ........................................................................................16

*United States v. Skrmetti*, 605 U.S. 495 (2025) .........................................................2

*Washington v. Trump*,
768 F. Supp. 3d 1239 (W.D. Wash. 2025),
*appeal filed*, No. 25-1922 (9th Cir. Mar. 24, 2025) ............................................12

*Watson v. Maryland*,
218 U.S. 173 (1910) ....................6

Constitutional Provisions

U.S. Const. amend. X....................5

Statutes

42 U.S.C. §1320a-7(b)(6) ....................13

215 Ill. Comp. Stat. 5/356z.60(b) ....................8

225 Ill. Comp. Stat. 60/22(C)....................9

735 Ill. Comp. Stat. 40/28-5....................7

775 Ill. Comp. Stat. 5/1-102(A) ....................7

775 Ill. Comp. Stat. 5/1-103(O-1)....................7

775 Ill. Comp. Stat. 5/1-103(Q) ....................7

Cal. Bus. & Prof. Code §2253 ....................9

Cal. Bus. & Prof. Code §2761.1 ....................9

Cal. Bus. & Prof. Code §850.1 ....................9

Cal. Bus. & Prof. Code §852 ....................9

Cal. Civ. Code §51 ....................7

Cal. Civ. Code §56.109....................7

Cal. Gov't Code §12940 ....................7

Cal. Gov't Code §12955 ....................7

Cal. Ins. Code §10133.13....................9

Colo. Rev. Stat. §10-16-121 ....................7

Colo. Rev. Stat. §10-4-109.6 .......... 9

Colo. Rev. Stat. §12-30-121 .......... 7, 9

Colo. Rev. Stat. §13-21-133 .......... 7

Colo. Rev. Stat. §16-3-102 .......... 7

Colo. Rev. Stat. §16-3-301 .......... 7

Conn. Gen. Stat. §10-15c .......... 7

Conn. Gen. Stat. §19a-17e .......... 7, 9

Conn. Gen. Stat. §20-579a .......... 9

Conn. Gen. Stat. §46a-58 .......... 7

Conn. Gen. Stat. §52-146w .......... 7

Conn. Gen. Stat. §52-146x .......... 7

Conn. Gen. Stat. §52-571m .......... 7, 9

Conn. Gen. Stat. §52-571n .......... 7

Conn. Gen. Stat. §54-155b .......... 7

D.C. Code §2-1401.01 .......... 7

Del. Code Ann. tit. 6, ch. 45 .......... 7

Del. Code Ann. tit. 6, ch. 46 .......... 7

Del. Code Ann. tit. 18, §2304 .......... 8

Del. Code Ann. tit. 19, ch. 7 .......... 7

Haw. Rev. Stat. §368-1 .......... 7

Haw. Rev. Stat. §378-2 .......... 7

Haw. Rev. Stat. §489-3 .......... 7

Haw. Rev. Stat. §515-3 .......... 7

Mass. Gen. Laws ch. 112, §128 .......... 9

Mass. Gen. Laws ch. 112, §5F1/2 .......... 9

Mass. Gen. Laws ch. 112, §77 .......... 9

Mass. Gen. Laws ch. 12, §§11I1/2 .......... 7

Mass. Gen. Laws ch. 147, §63 .......... 7

Mass. Gen. Laws ch. 151B, §4 .......... 7

Mass. Gen. Laws ch. 272, §92A .......... 7, 8

Mass. Gen. Laws ch. 272, §98 .......... 7, 8

Mass. Gen. Laws ch. 276, §13 .......... 7

Md. Code Ann., Educ. §26-704 .......... 7

Md. Code Ann., Health Occ. §1-227 .......... 9

Md. Code Ann., Ins. §15-1A-22 .......... 8

Md. Code Ann., State Gov't §20-606 .......... 7

Md. Code Ann., State Gov't §20-705 .......... 7

Md. Code Ann., State Pers. & Pens. §2-312 .......... 7

Me. Stat. tit. 14, §9001 .......... 7

Me. Stat. tit. 22, §1508 .......... 7

Me. Stat. tit. 22, §3174-MMM .......... 8

Me. Stat. tit. 5, §4551 .......... 7

Minn. Stat. §256B.0625, subd. 3a....8

Minn. Stat. §260.925....7

Minn. Stat. §363A.01....7

Minn. Stat. §363A.03, subd. 50....7

Minn. Stat. §62Q.585....8

N.J. Stat. Ann. §10:5-1....7

N.J. Stat. Ann. §17:48-600....7, 8

N.J. Stat. Ann. §18A:36-41....7

N.Y. Civ. Rights Law §40-c....7

N.Y. Comp. Codes R. & Regs. tit. 10, §405.7....7

N.Y. Comp. Codes R. & Regs. tit. 11, §52.75....8

N.Y. Comp. Codes R. & Regs. tit. 9, §466.13....7

N.Y. Educ. Law §6531-b....9

N.Y. Exec. Law §296....7

N.Y. Exec. Law §296-a....7

N.Y. Exec. Law §296-b....7

N.Y. Exec. Law §837-x....7

Nev. Rev. Stat. §118.100....7

Nev. Rev. Stat. §284.150(3)....7

Nev. Rev. Stat. §439.994....7

Nev. Rev. Stat. §449.101(1)....7

Nev. Rev. Stat. §613.330 ..................................................................... 7

Or. Rev. Stat. §15.430 ..................................................................... 8

Or. Rev. Stat. §24.500 ..................................................................... 8

Or. Rev. Stat. §414.769 ..................................................................... 8

Or. Rev. Stat. §435.210 ..................................................................... 8

Or. Rev. Stat. §435.240 ..................................................................... 8

Or. Rev. Stat. §659A.006 ..................................................................... 7

Or. Rev. Stat. §659A.030 ..................................................................... 7

Or. Rev. Stat. §659A.403 ..................................................................... 7

Or. Rev. Stat. §659A.421 ..................................................................... 7

Or. Rev. Stat. §675.070 ..................................................................... 9

Or. Rev. Stat. §675.540 ..................................................................... 9

Or. Rev. Stat. §675.745 ..................................................................... 9

Or. Rev. Stat. §676.313 ..................................................................... 9

Or. Rev. Stat. §677.190 ..................................................................... 9

Or. Rev. Stat. §678.138 ..................................................................... 9

Or. Rev. Stat. §685.110 ..................................................................... 9

Or. Rev. Stat. §689.405 ..................................................................... 9

R.I. Gen. Laws §11-24-2 ..................................................................... 7

R.I. Gen. Laws §23-17-19 ..................................................................... 7

R.I. Gen. Laws §28-5.1-12 ..................................................................... 7

R.I. Gen. Laws §28-5-5 ... 7

R.I. Gen. Laws §28-6-18 ... 7

R.I. Gen. Laws §34-37-2 ... 7

R.I. Gen. Laws §34-37-4 ... 7

R.I. Gen. Laws §34-37-4.3 ... 7

R.I. Gen. Laws §34-37-5.2 ... 7

R.I. Gen. Laws §34-37-5.3 ... 7

R.I. Gen. Laws §34-37-5.4 ... 7

Vt. Stat. Ann. tit. 12, §7301 ... 8

Vt. Stat. Ann. tit. 21, §495 ... 7

Vt. Stat. Ann. tit. 8, §4088m ... 8

Vt. Stat. Ann. tit. 8, §4724 ... 8

Vt. Stat. Ann. tit. 9, §4502 ... 7

Vt. Stat. Ann. tit. 9, §4503 ... 7

Wash. Rev. Code §18.130.450 ... 9

Wash. Rev. Code §49.60.030 ... 7

Wash. Rev. Code §49.60.040 ... 7

Wash. Rev. Code §49.60.215 ... 7

Wash. Rev. Code §74.09.675 ... 8

Wash. Rev. Code §74.09.700 ... 8

Wash. Rev. Code ch. 7.115 ... 7, 9

Rules

Fed. R. App. P. 40(b)(2)(D) .................................................................... i

Regulations

244 Mass. Code Regs. §9.03(13) ....................................................................8

Cal. Code Regs. tit. 10, §2561.2, subd. (a) ....................................................8

Colo. Code Regs. §3-702-4 ............................................................................8

Colo. Code Regs. §4-2-42 ..............................................................................8

Ill. Admin. Code tit. 50, §2603.35 ...................................................................8

Ill. Admin. Code tit. 89, §140.413(a)(16) .........................................................8

Ill. Admin. Code tit. 89, §140.440(h) ...............................................................8

Mass. Bd. of Reg. in Medicine Policy 16-01 ....................................................8

Md. Code Ann., Health-Gen. §15-151 ..............................................................8

N.J. Admin. Code Exec. Order No. 326 ...........................................................8

Or. Admin. R. 836-053-0441 ...........................................................................8

Other Authorities

Declaration of the Secretary of the Department of Health and Human Services RE: Safety, Effectiveness, and Professional Standards of Care for Sex Rejecting Procedures on Children and Adolescents (Dec. 18, 2025) ........... 12, 13

Exec. Order 14,168, 90 Fed. Reg. 8615 (Jan. 20, 2025)...................................9

Exec. Order 14,187, 90 Fed. Reg. 8771 (Jan. 28, 2025)............................ 9, 13

Gender-Affirming Care Covered by MassHealth ..............................................8

Jennifer Brown, *Children's Hospital doctors refuse to provide gender-affirming care to trans youth, fearing criminal charges*, Colorado Sun (Jun. 16, 2026) ....................4

Mass. Div. of Ins. Bull. 2021-11 ....................8

Mass. Div. of Ins. Bull. 2014-03 ....................8

Nev. Medicaid Servs. Manual § 608 ....................8

Patricia J. Zettler, *Toward Coherent Federal Oversight of Medicine*, 52 San Diego L. Rev. 427 (2015) ....................6

Press Release, U.S. Dep't of Justice, Department of Justice Subpoenas Doctors and Clinics Involved in Performing Transgender Medical Procedures on Children (July 9, 2025) ....................11

Press Release, U.S. Dep't of Justice, DOJ Secures Agreements with NYU and UPMC to End Pediatric "Gender-Affirming Care" (Sep. 18, 2026) ....................3

Press Release, U.S. Dep't of Justice, *Justice Department Secures Agreement with Connecticut Children's to End Pediatric "Gender-Affirming Care"* (Aug. 5, 2026) ....................4

Press Release, U.S. Dep't of Justice, *Justice Department Secures Agreement with Mount Sinai to End Pediatric "Gender-Affirming Care"* (Sep. 4, 2026) ......4

Press Release, U.S. Dep't of Justice, Justice Department Secures Landmark Resolution to End Pediatric "Gender-Affirming Care" and Create Detransition Clinic (May 15, 2026) ....................3

Press Release, U.S. Dep't of Justice, Justice Department Secures Resolution with Cleveland Clinic to End Pediatric "Gender-Affirming Care" (June 5, 2026) ....................4

R.I. Gender Dysphoria/Gender Nonconformity Coverage Guidelines (Oct. 28, 2015) ....................8

R.I. Health Ins. Bull. 2015-03 ....................8

## I. INTRODUCTION AND STATEMENT OF INTERESTS

The States of Washington, Massachusetts, Arizona, California, Colorado, Connecticut, Delaware, the District of Columbia, Illinois, Maine, Maryland, Michigan, Minnesota, Nevada, New Jersey, New Mexico, New York, Oregon, Rhode Island, Vermont and Virginia (Amici States) submit this brief in support of QueerDoc's petition for rehearing en banc because the divided panel's outlier decision fails to give proper deference to the district court's factual determination that the subpoena was issued for an improper purpose to intimidate healthcare providers out of delivering lawful healthcare. This presents an exceptionally important issue that warrants this full Court's consideration. *See* Fed. R. App. P. 40(b)(2)(D).

In the summer of 2025, the Department of Justice served subpoenas across the country on providers of transgender healthcare for minors, including QueerDoc, a Washington-based provider. In addition to QueerDoc, subpoena recipients in Amici States include Seattle Children's Hospital, Boston Children's Hospital, Children's Hospital Colorado, Children's National Hospital, Children's Hospital of Philadelphia, and the University of Pittsburgh Medical Center. These providers and hospitals deliver essential medical care to tens of thousands of people every year, including medically necessary transgender healthcare to individuals under the age

of 19. They also provide essential medical care that is expressly protected by law in many Amici States and is consistent with state medical standards.

As numerous courts across the country have found, these subpoenas serve no legitimate investigatory purpose, are overly broad, harassing, and intrusive, jeopardize the health and welfare of State residents, and threaten to undermine the States' sovereign interest in regulating the practice of medicine in their jurisdictions. In concluding otherwise, the divided panel's opinion substitutes the district court's factual findings about improper purpose with its own, breaks with these well-reasoned decisions, and erodes access to transgender healthcare that is lawful under federal law and in the states where it occurs. The decision also attacks the Supreme Court's recognition that access to transgender healthcare falls within the "discretion" of the States to allow it. *United States v. Skrmetti*, 605 U.S. 495, 524 (2025) (quoting *Gonzales v. Carhart*, 550 U.S. 124, 163 (2007)).

Six federal district courts have quashed similar subpoenas issued to other providers as part of DOJ's campaign against transgender healthcare.[1] *See In re Subpoena Duces Tecum No. 25-1431-016*, No. 2:25-mc-00041-JHC, 2025 WL 3562151 (W.D. Wash. Sep. 3, 2025), *appeal filed*, No. 26-4009 (9th Cir.); *In re*

[1] Additionally, a United States Magistrate Judge recommended granting Colorado Children's Hospital's motion to quash a similar improper subpoena. *In re Dep't of Just. Admin. Subpoena No. 25-1431-030*, No. 1:25-mc-00063-SKC-CYC, 2026 WL 33398 (D. Colo. Jan. 5, 2026).

*Subpoena No. 25-1431-019*, 800 F. Supp. 3d 229 (D. Mass. 2025); *In re Subpoena No. 25-1431-014*, 810 F. Supp. 3d 555 (E.D. Pa. 2025), *appeal dismissed*, No. 26-1134 (3d Cir. May 12, 2026); *In re 2025 UPMC Subpoena*, 2:25-mc-01069-CB, 2025 WL 3724705 (W.D. Pa. Dec. 24, 2025), *appeal dismissed*, No. 26-1401, 26-1545 (3d Cir. Aug. 12, 2026); *In re 2025 Subpoena to Children's Nat'l Hosp.*, No. 1:25-cv-03780, 2026 WL 160792 (D. Md. Jan. 21, 2026), *appeal filed*, No. 26-1104 (4th Cir. Jan. 28, 2026); *In re Admin. Subpoena 25-1431-032 to R.I. Hosp.*, 836 F. Supp. 3d 459 (D.R.I. May 14, 2026), *appeal filed*, No. 26-1568 (1st Cir. May 19, 2026).[2] Nonetheless, DOJ's harassment campaign to "end" gender-affirming care is working; many providers around the country have yielded under the unrelenting pressure and stopped providing transgender healthcare to minors, including providers in Amici States.[3]

---

[2] And, as the District of Rhode Island found, DOJ has now switched tacks by issuing and enforcing subpoenas out of the Northern District of Texas, a distant forum that DOJ deems "friendly to its political positions," "in an obvious effort to shield its recent investigative tactics—previously rejected by every other court to review them[.]" *In re Admin. Subpoena 25-1431-032 to R.I. Hosp.*, 836 F. Supp. 3d at 463.

[3] These hospitals were targeted for investigation before they agreed to "end" their provision of care. *See* Press Release, U.S. Dep't of Justice, DOJ Secures Agreements with NYU and UPMC to End Pediatric "Gender-Affirming Care" (Sep. 18, 2026), https://www.justice.gov/opa/pr/doj-secures-agreements-nyu-and-upmc-end-pediatric-gender-affirming-care (on file with author) (announcing agreements for two hospitals to pay a total of over $10 million and to stop providing "dangerous interventions to minors" following "investigations into potential violations of federal law arising from their provision of . . . [what is] often euphemistically referred to as 'gender-affirming care.'"); *see also* Press Release, U.S. Dep't of Justice, Justice Department Secures Landmark Resolution to End Pediatric "Gender-Affirming Care" and Create Detransition Clinic (May 15, 2026),

The subpoena served by DOJ was properly quashed by the district court because it is pretextual and is part of a campaign to intimidate medical providers in Amici States to cease offering critical, medically necessary healthcare to transgender minors—one of the most vulnerable populations in Amici States. Indeed, the subpoena places medical providers in the crosshairs of civil and criminal enforcement mechanisms, including prosecutions, merely for providing healthcare services that are lawful and protected in Amici States.

For the reasons that follow, as well as those advanced by QueerDoc, this Court should grant the petition for rehearing en banc to resolve this exceptionally important issue.

---

https://www.justice.gov/opa/pr/justice-department-secures-landmark-resolution-end-pediatric-gender-affirming-care-and (on file with author) (announcing Texas Children's Hospital agreed to stop offering transgender healthcare to minors and pay over $10 million in penalties); Press Release, U.S. Dep't of Justice, Justice Department Secures Resolution with Cleveland Clinic to End Pediatric "Gender-Affirming Care" (June 5, 2026), https://www.justice.gov/opa/pr/justice-department-secures-resolution-cleveland-clinic-end-pediatric-gender-affirming-care (on file with author) (announcing Cleveland Clinic agreed to halt provision of transgender healthcare for "decades" and pay a $308,000 fine); Jennifer Brown, *Children's Hospital doctors refuse to provide gender-affirming care to trans youth, fearing criminal charges*, Colorado Sun (Jun. 16, 2026), https://coloradosun.com/2026/06/16/transgender-gender-affirming-care-childrens-hospital-colorado/; Press Release, U.S. Dep't of Justice, *Justice Department Secures Agreement with Connecticut Children's to End Pediatric "Gender-Affirming Care"* (Aug. 5, 2026), https://www.justice.gov/opa/pr/justice-department-secures-agreement-connecticut-childrens-end-pediatric-gender-affirming (on file with author); Press Release, U.S. Dep't of Justice, *Justice Department Secures Agreement with Mount Sinai to End Pediatric "Gender-Affirming Care"* (Sep. 4, 2026), https://www.justice.gov/opa/pr/justice-department-secures-agreement-mount-sinai-end-pediatric-gender-affirming-care (on file with author).

## II. ARGUMENT

### A. The Federal Government Seeks to Interfere with Amici States' Authority to Regulate the Practice of Medicine

As sovereigns of their respective territories, States reserve the power to provide for the health, welfare, safety, and security of the people. *See Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 756 (1985); *see also Hillsborough Cnty., Fla. v. Automated Med. Lab'ys, Inc.*, 471 U.S. 707, 719 (1985); *Linder v. United States*, 268 U.S. 5, 18 (1925). The subpoena in this case—like the others issued by DOJ—threatens to upend these fundamental principles.

The Tenth Amendment reserves for the States all rights and powers "not delegated to the United States" federal government. U.S. Const. amend. X. Commonly referred to as "traditional state police powers," the rights and powers of the States include the "powers to protect the health and safety of their citizens." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 475 (1996); *see also Slaughter-House Cases*, 83 U.S. 36, 62 (1872) (describing the police power as extending "to the protection of the lives, limbs, health, comfort, and quiet of all persons . . . within the State"). States have long exercised authority to regulate the practice of medicine. *See Dent v. West Virginia*, 129 U.S. 114, 122 (1889) (states have discretion to set medical licensing requirements as they have done since "time immemorial"). Though Congress may legislate to regulate interstate activities, the Executive may not stretch the language of statutes to invent novel forms of criminal activity in order to disrupt

a State's medical regulatory framework. *See Gonzales v. Oregon*, 546 U.S. 243, 269–70 (2006) (holding that the Controlled Substances Act did not prohibit Oregon doctors from prescribing medication to assist patients in ending their lives where that was permitted by state law). Courts have upheld a broad set of "state medical practice laws against constitutional challenges, making clear that states are generally authorized to legislate in the medical practice area."[4]

States have exercised their traditional police power to regulate medicine in various ways, including by licensing medical professionals,[5] disciplining violators of licensing rules, and by "enact[ing] laws and regulations that directly circumscribe how licensed practitioners conduct medical practice," such as reporting, disclosure, and timeframe rules.[6]

States have also exercised their police powers to protect vulnerable groups against discrimination and ensure equal access to critical healthcare. Consistent with state policy judgments about protecting minority populations and prohibiting

---

[4] Patricia J. Zettler, *Toward Coherent Federal Oversight of Medicine*, 52 San Diego L. Rev. 427, 448 (2015); *see also Hillsborough Cnty.*, 471 U.S. at 719 ("the regulation of health and safety matters is primarily, and historically, a matter of local concern"); *Watson v. Maryland*, 218 U.S. 173, 176 (1910) (the police power of the states extends to the regulation of certain trades and callings, particularly those which closely concern the public health" and discussing licensing of medical practitioners); *Buckman Co. v. Pls.' Legal Comm.*, 531 U.S. 341, 348 (2001) (identifying "historic primacy of state regulation of matters of health and safety").

[5] Zettler, *supra* note 4, at 449–50 n.127 (stating the "cornerstone" of medical practice regulation is states' licensing schemes).

[6] *Id.* at 450–52.

discrimination, many Amici States have enacted civil rights protections for transgender people in education, employment, healthcare, housing, public accommodations, and other parts of public life.[7] They have also taken specific steps to safeguard access to medical care for transgender people, exercising their sovereign judgment that such safeguards promote public health and wellbeing. For instance, Washington, Massachusetts, and many other Amici States expressly recognize a legal right to transgender healthcare and have enacted laws intended to protect patients and practitioners in their States who access, provide, or assist with the provision of that care.[8] Some State licensing boards also instruct licensees that

---

[7] *See, e.g.*, Wash. Rev. Code §§49.60.030(1), 49.60.040(2), 49.60.040(29), 49.60.215; Mass. Gen. Laws ch. 151B, §4; Mass. Gen. Laws ch. 272, §§92A, 98; Cal. Civ. Code §§51(b), 51(e)(5); Cal. Gov't Code §§12940(a), 12955; Conn. Gen. Stat. §§10-15c, 46a-58 *et seq.*; Del. Code Ann. tit. 6, ch. 45, 46, tit. 19, ch. 7; D.C. Code §2-1401.01 *et seq.*; Haw. Rev. Stat. §§368-1, 378-2, 489-3, 515-3; 775 Ill. Comp. Stat. 5/1-102(A), 5/1-103(O-1), 5/1-103(Q); Me. Stat. tit. 5, §4551 *et seq.*; Md. Code Ann., State Gov't §§20-606, 20-705; Md. Code Ann., Educ. §26-704; Minn. Stat. §§363A.03, subd. 50; 363A.01 *et seq.*; Nev. Rev. Stat. §§118.100, 284.150(3), 439.994, 449.101(1), 613.330; N.J. Stat. Ann. §§10:5-1 *et seq.*, 17:48-600, 18A:36-41; N.Y. Exec. Law §§296, 296-a, 296-b; N.Y. Civ. Rights Law §40-c; N.Y. Comp. Codes R. & Regs. tit. 9, §466.13; Or. Rev. Stat. §§659A.006, 659A.030, 659A.403, 659A.421; R.I. Gen. Laws §§11-24-2, 23-17-19, 28-5-5, 28-5.1-12, 28-6-18, 34-37-2, 34-37-4, 34-37-4.3, 34-37-5.2, 34-37-5.3, 34-37-5.4; Vt. Stat. Ann. tit. 9, §§4502, 4503, tit. 21, §495.

[8] *See, e.g.*, Wash. Rev. Code ch. 7.115 *et seq.*; Mass. Gen. Laws ch. 12, §§11I1/2(b)-(d); Mass. Gen. Laws ch. 147, §63, ch. 276, §13; Cal. Civ. Code §56.109; Colo. Rev. Stat. §§10-16-121(1)(f), 12-30-121, 13-21-133, 16-3-102, 16-3-301; Conn. Gen. Stat. §§19a-17e, 52-146w, 52-146x, 52-571m, 52-571n, 54-155b; 735 Ill. Comp. Stat. 40/28-5, *et seq.*; Me. Stat. tit. 14, §9001, *et seq.*; Me. Stat. tit. 22, §1508; Md. Code Ann., State Pers. & Pens. §2-312; Minn. Stat. §260.925; N.Y. Exec. Law §837-x; N.Y. Comp. Codes R. & Regs. tit. 10, §405.7(c)(2);

they shall not withhold or deny care based on a patient's gender identity.[9] Many Amici also cover treatments for gender dysphoria through their State Medicaid programs,[10] and they prohibit State-regulated health insurance plans from withholding coverage from individuals based on their gender identity or gender dysphoria diagnosis, thereby ensuring that transgender residents enjoy the same coverage for medically necessary treatment as residents who are not transgender.[11]

---

Or. Rev. Stat. §§15.430, 24.500, 414.769, 435.210, 435.240; Vt. Stat. Ann. tit. 12, §7301 *et seq*.; N.J. Admin. Code Exec. Order No. 326 (2023).

[9] *See* 244 Mass. Code Regs. §9.03(13); Mass. Bd. of Reg. in Medicine Policy 16-01, *available at* https://www.mass.gov/lists/physician-regulations-policies-and-guidelines.

[10] *See, e.g.*, Wash. Rev. Code §74.09.700; Ill. Admin. Code tit. 89, §§140.413(a)(16), 140.440(h); Md. Code Ann., Health-Gen. §15-151; Gender-Affirming Care Covered by MassHealth, https://www.mass.gov/info-details/gender-affirming-care-covered-by-masshealth; Minn. Stat. §256B.0625, subd. 3a; Nev. Medicaid Servs. Manual § 608, *available at* https://dhcfp.nv.gov/uploadedFiles/dhcfpnvgov/content/Resources/AdminSupport/Manuals/MSM/C600/MSM_600_25-07-30.pdf; R.I. Gender Dysphoria/Gender Nonconformity Coverage Guidelines (Oct. 28, 2015), *available at* https://eohhs.ri.gov/sites/g/files/xkgbur226/files/Portals/0/Uploads/Documents/MA-Providers/MA-Reference-Guides/Physician/gender_dysphoria.pdf.

[11] *See, e.g.*, Wash. Rev. Code §74.09.675; Cal. Code Regs. tit. 10, §2561.2, subd. (a); Colo. Code Regs. §§3-702-4, 4-2-42, 5(A)(1)(o); Del. Code Ann. tit. 18, §2304; 215 Ill. Comp. Stat. 5/356z.60(b); Ill. Admin. Code tit. 50, §2603.35; Me. Stat. tit. 22, §3174-MMM; Md. Code Ann., Ins. §15-1A-22; Mass. Gen. Laws ch. 272, §§92A, 98; Minn. Stat. §62Q.585; N.J. Stat. Ann. §17:48-600; N.Y. Comp. Codes R. & Regs. tit. 11, §52.75; Or. Admin. R. 836-053-0441; Vt. Stat. Ann. tit. 8, §§4724, 4088m; Mass. Div. of Ins. Bulls. 2021-11, 2014-03, *available at* https://www.mass.gov/lists/doi-bulletins; R.I. Health Ins. Bull. 2015-03, *available at* https://ohic.ri.gov/sites/g/files/xkgbur736/files/bulletins/Bulletin-2015-3-Guidance-Regarding-Prohibited-Discrimination.pdf.

Similarly, many Amici States have enacted laws that explicitly protect medical providers of transgender healthcare who act consistent with standards of care from malpractice liability or findings of professional misconduct.[12] Other Amici States, meanwhile, mandate training for healthcare professionals on trans-inclusive care.[13] Taken together, the above laws and policies reflect Amici States' commitment to preserving the integrity of the medical profession, protecting the equality of all people, and ensuring that people with gender dysphoria are not denied medically necessary healthcare within Amici States.

Despite no federal law prohibiting medical care to treat gender dysphoria, the clear purpose of DOJ's subpoena to QueerDoc is to "end" gender-affirming care for transgender adolescents in Amici States consistent with the President's Executive Order.[14] *See* Exec. Order 14,187, 90 Fed. Reg. 8771 (Jan. 28, 2025) (cited as E.O.

---

[12] *See, e.g.*, Wash. Rev. Code §18.130.450; Wash. Rev. Code ch. 7.115; Cal. Bus. & Prof. Code §§850.1, 852, 2253, 2761.1; Conn. Gen. Stat. §§19a-17e, 20-579a, 52-571m; Colo. Rev. Stat. §12-30-121; Mass. Gen. Laws ch. 112, §§5F1/2, 77, 128; Md. Code Ann., Health Occ. §1-227; N.Y. Educ. Law §6531-b; Or. Rev. Stat. §§675.070, 675.540, 675.745, 677.190, 678.138, 685.110, 689.405; 225 Ill. Comp. Stat. 60/22(C). Relatedly, some Amicus States bar medical malpractice insurers from discriminating against medical professionals solely because they provide gender-affirming care. *See, e.g.*, Colo. Rev. Stat. §10-4-109.6(1); Or. Rev. Stat. §676.313.

[13] *See, e.g.*, Cal. Ins. Code §10133.13.

[14] This Executive Order is one of many orders targeting transgender people. On the first day of his second term in office, President Trump issued Executive Order 14,168, which declares that gender identity is a "false" idea and that the United States only recognizes "two sexes, male and female" which are "not changeable." Exec. Order 14,168, 90 Fed. Reg. 8615 (Jan. 20, 2025). "The Administration has

14,187) (declaring gender-affirming medical care "a stain on our Nation's history" that "must end"); ER-048, 053 (memo from AG Bondi directing DOJ to bring "the unconscionable ideology behind 'gender-affirming care,'"—described as "a radical ideological agenda" used "to justify the barbaric practice of surgically and chemically maiming and sterilizing children"—"to an end").

DOJ has stretched federal law past its breaking point in multiple respects to achieve this improper end. DOJ has issued dozens of administrative and grand jury subpoenas to providers and hospitals across the country, making sweeping requests for sensitive information—including records of all patients who have received a particular type of medical care—purportedly in the name of enforcing the Food, Drug, and Cosmetic Act, as well as the False Claims Act.[15] These actions represent a radical departure from DOJ's prior practice and make express the goal of the Executive Branch to harm a politically disfavored minority by seeking an end to medical treatments that Amici States, exercising their sovereign power to regulate

issued several other executive orders prohibiting transgender individuals from serving in the military, eliminating federal funding from schools that support 'gender ideology,' and banning transgender women and girls from competing in sports aligned with their gender identity." *In re Admin. Subpoena No. 25-1431-019*, 800 F. Supp. 3d at 233.

[15] Press Release, U.S. Dep't of Justice, Department of Justice Subpoenas Doctors and Clinics Involved in Performing Transgender Medical Procedures on Children (July 9, 2025), https://www.justice.gov/opa/pr/department-justice-subpoenas-doctors-and-clinics-involved-performing-transgender-medical (on file with author).

medicine, protect. *See id.*; *see also* ER-008 (order quoting statement by Attorney General Bondi that "[m]edical professionals and organizations that mutilated children in the service of a warped ideology will be held accountable by this Department of Justice"); Amicus Curiae Br. of Former U.S. Dep't of Justice Attorneys, Dkt Entry 42.1. As another court explained last summer in quashing a subpoena nearly identical to that sent to QueerDoc, "[i]t is abundantly clear that the true purpose of issuing the subpoena is to interfere with [states'] right to protect [gender-affirming care] within its borders, to harass and intimidate [providers] to stop providing such care, and to dissuade patients from seeking such care." *In re Admin. Subpoena No. 25-1431-019*, 800 F. Supp. 3d at 239 (quashing subpoena to Boston Children's Hospital); *see also In re 2025 UPMC Subpoena*, 2025 WL 3724705, at *2 (finding that "the United States's investigation tramples the Commonwealth of Pennsylvania's power to police, and legislate, matters of medical care"). And, in a broader challenge to DOJ's subpoena practices in this area, a district court expressly found that the directives giving rise to the subpoenas sent to QueerDoc and others did not merely express enforcement priorities, but instead were premised on novel and expansive interpretations of the laws they purported to enforce in an attempt to effectively ban the provision of transition care for minors, sweeping into their ambit healthcare that had never been addressed (let alone

prohibited) by those laws before. *See Massachusetts v. Trump*, 836 F. Supp. 3d 385, 406–08, 413 (D. Mass. 2026).

Courts have enjoined other aspects of the federal government's crusade to eliminate transgender healthcare. Multiple courts have issued injunctions against executive orders prohibiting federal funding to institutions providing transgender healthcare to patients under nineteen. *See PFLAG, Inc. v. Trump*, 766 F. Supp. 3d 535, 545 (D. Md. 2025), *appeal filed*, No. 25-1279 (4th Cir. Mar. 24, 2025); *Washington v. Trump*, 768 F. Supp. 3d 1239 (W.D. Wash. 2025), *appeal filed*, No. 25-1922 (9th Cir. Mar. 24, 2025). Separately, in December 2025, the Secretary of Health and Human Services (HHS), without prior notice or statutory authority, posted on HHS's website an unprecedented "declaration" purporting to declare that transgender healthcare for minors is "neither safe nor effective as a treatment modality." Declaration of the Secretary of the Department of Health and Human Services RE: Safety, Effectiveness, and Professional Standards of Care for Sex Rejecting Procedures on Children and Adolescents (Dec. 18, 2025), *available at* https://litigationtracker.law.georgetown.edu/wp-content/uploads/2026/04/declaration-pediatric-sex-rejecting-procedures.pdf. Significantly, the declaration deemed the provision of this care a "fail[ure] to meet professionally recognized standards of health care[,]" and indicated that providers of such care may be referred to HHS's Office of the Inspector General for exclusion from federal healthcare programs,

including Medicare and Medicaid. *Id.*; *see* 42 U.S.C. §1320a-7(b)(6). After the declaration was challenged by multiple states—including many of the Amici States here—the district court found that HHS "failed to invoke *any* statutory authority that authorizes the Kennedy Declaration, much less an 'unmistakably clear' one that would be required to supplant states' authority to regulate medical conduct." *Oregon v. Kennedy*, 831 F. Supp. 3d 1048, 1077 (D. Or. 2026); *see also Oregon v. Kennedy*, No. 6:25-cv-02409-MTK, 2026 WL 2766893, at *2–3 (D. Or. Sept. 17, 2026) (denying motion to amend judgment because defendants "fail to identify any hypothetical authority authorizing that which the Kennedy Declaration attempted to do, and which the Court found Defendants lacked statutory authority to do").

As reflected in these unrelenting attacks by the federal government on lawful transgender healthcare, the subpoena to QueerDoc has nothing at all to do with promoting the rule of law. Rather, this extraordinary overreach is an attempt to "end" transgender healthcare, E.O. 14,187, by subverting the policy and judgment of the states as the traditional regulators of the practice of medicine. The same invidious and unlawful purpose is evident in the identical subpoenas served in Washington and other Amici States and in the federal government's other efforts to distort existing federal law and unlawfully encroach on core aspects of the practice of medicine. The broadside attack by DOJ on transgender healthcare undermines the

Amici States' sovereign authority in regulating the practice of medicine within our borders and protecting the health and safety of our residents.

### B. The Use of Investigative Power to End Lawful Healthcare Should Be Rejected

Over the last year, courts have consistently recognized that DOJ's novel reading of federal statutes is an unlawful attempt to harass and intimidate providers of transgender healthcare into stopping care. The panel substituted its factual determination that the DOJ pursued legitimate enforcement ends when the district court carefully reviewed the record and made the factual finding that the DOJ issued the subpoena for an improper purpose.

Emphasizing DOJ's obvious purpose of using subpoenas to target providers based solely on their provision of lawful transgender healthcare, a chorus of federal courts nationwide have found that these subpoenas "bear little relation to [the] supposed purpose of investigating FDCA violations," *In re Dep't of Just. Admin. Subpoena No. 25-1431-030*, 2026 WL 33398, at *6 (report and recommendation of U.S. Magistrate Judge), and go so far beyond the scope of the FDCA as to "carr[y] more than a whiff of ill-intent," *In re 2025 UPMC Subpoena*, 2025 WL 3724705 at *2. DOJ seeks to collect sweeping information about institutions, their personnel, and their patients, with only "an idle hope of discovering information related to a federal healthcare offense." *In re Subpoena Duces Tecum No. 25-1431-016*, 2025 WL 3562151, at *9 (citation modified).

Here, according to the record, DOJ counsel *admitted* to QueerDoc's counsel that the QueerDoc subpoena was issued merely because of the policy directives from the President and Attorney General to end transgender healthcare, and that DOJ had no basis for targeting QueerDoc except that the entity was a "prominent" provider of gender-affirming care. "[T]hat's the extent of it," advised the DOJ attorney. SER-009 (Ramer Decl.) ¶¶ 6–7.

The federal government should not be permitted, as it would be by the divided panel's decision, to use the threat of criminal investigations as a means to intimidate providers into ceasing to offer healthcare services that are lawful and protected in many Amici States. The panel starts with the uncontroversial premise that presidential administrations are allowed to have policy preferences, and advocate for them. *See* Op. at 35 ("[T]he Administration's policy views and objectives were not themselves 'improper.'"). But the panel erred in displacing the district court's factual determination with a presumption of regularity. *See Novedades Y Servicios, Inc. v. Fin. Crimes Enf't Network*, 181 F.4th 961, 976 (9th Cir. 2026) (holding presumption of regularity was rebutted where district court's factual findings did not constitute clear error). Here, the divided panel's decision unjustifiably discards the district court's factual findings regarding the "extensive evidence . . . that DOJ's stated, statutorily authorized purpose for its investigation was not in fact its 'honest[]' objective." *See* Op. at 92 (Paez, J., dissenting) (quoting *United States v. LaSalle*

*Nat'l Bank*, 437 U.S. 298, 316 (1978)). The panel also breaks radically with the decisions of other courts which, on records similar to that assembled by QueerDoc, had no trouble finding that nearly identical subpoenas were not bona fide investigative efforts, but instead improper, bad faith efforts to use the administration's powerful enforcement tools to try to intimidate providers into ceasing lawful medical care. *In re 2025 UPMC Subpoena*, 2025 WL 3724705, at *1 (collecting cases); *see also In re Admin. Subpoena No. 25-1431-019*, 800 F. Supp. 3d at 239 (subpoena to Boston Children's Hospital "was issued for an improper purpose, motivated only by bad faith"); *In re Subpoena Duces Tecum No. 25-1431-016*, 2025 WL 3562151, at *13 (quashing subpoena to Seattle Children's Hospital because it "was issued for an improper purpose"); *In re 2025 Subpoena to Children's Nat'l Hosp.*, 2026 WL 160792, at *9 (quashing subpoena to Children's National Hospital because it "bears no credible connection to an investigation of any statutory violation" and "appears to have no purpose other than to intimidate and harass the Hospital and Movants"); *In re Dep't of Just. Admin. Subpoena No. 25-1431-030*, 2026 WL 33398, at *7 (recommending that subpoena to Children's Hospital Colorado be quashed; explaining "the government's aim is not actually to investigate FDCA violations, but to use the FDCA as a smokescreen for its true objective of pressuring pediatric hospitals into ending gender-affirming care through commencing vague, suspicionless 'investigations.'").

It is emphatically an improper purpose to issue a subpoena to intimidate the target out of providing *lawful* healthcare. The panel decision must be taken up en banc and vacated because it gives little weight to the district court's (correct) factual determination that the subpoena was issued in bad faith. As the district court held: "No clearer evidence of improper purpose could exist than the Government's own repeated declarations that it seeks to end the very practice it claims to be merely investigating." ER-017.

Accordingly, the divided panel's outlier decision breaking with longstanding precedent to impose a de novo standard of review warrants en banc review.

## III. CONCLUSION

Amici States respectfully urge the Court to grant QueerDoc's petition for rehearing en banc.

RESPECTFULLY SUBMITTED this 8th day of October 2026.

NICHOLAS W. BROWN
*Attorney General of Washington*

*s/ Lauryn K. Fraas*
LAURYN K. FRAAS, WSBA #53238
*Assistant Attorney General*
WILLIAM MCGINTY, WSBA #41868
CRISTINA SEPE, WSBA #53609
*Deputy Solicitors General*
800 Fifth Avenue, Suite 2000
Seattle, WA 98504
206-464-7744
Lauryn.Fraas@atg.wa.gov
*Counsel for Washington*

ANDREA JOY CAMPBELL
*Attorney General of Massachusetts*

ALLYSON SLATER
*Director, Reproductive Justice Unit*
ADAM M. CAMBIER
MORGAN CARMEN
JAK KUNDL
*Assistant Attorneys General*
One Ashburton Place
Boston, MA 02108
617-727-2200
Adam.Cambier@mass.gov
*Counsel for Massachusetts*

KRIS MAYES
*Attorney General*
*State of Arizona*
2005 N. Central Ave
Phoenix, AZ 85004

ROB BONTA
*Attorney General*
*State of California*
1515 Clay Street
Oakland, CA 94612

PHILIP J. WEISER
*Attorney General*
*State of Colorado*
1300 Broadway
Denver, CO 80203

WILLIAM TONG
*Attorney General*
*State of Connecticut*
165 Capitol Avenue
Hartford, CT 06106

KATHLEEN JENNINGS
*Attorney General*
*State of Delaware*
820 N. French Street
Wilmington, DE 19801

BRIAN L. SCHWALB
*Attorney General*
*District of Columbia*
400 6th Street, NW, Suite 8100
Washington, D.C. 20001

KWAME RAOUL
*Attorney General*
*State of Illinois*
115 South LaSalle Street
Chicago, IL 60603

AARON M. FREY
*Attorney General*
*State of Maine*
6 State House Station
Augusta, ME 04333

ANTHONY G. BROWN
*Attorney General*
*State of Maryland*
200 Saint Paul Place
Baltimore, MD 21202

DANA NESSEL
*Attorney General*
*State of Michigan*
P.O. Box 30212
Lansing, Michigan 48909

KEITH ELLISON
*Attorney General*
*State of Minnesota*
102 State Capitol
75 Rev. Dr. Martin Luther King Jr. Blvd.
St. Paul, MN 55155

AARON D. FORD
*Attorney General*
*State of Nevada*
100 North Carson Street
Carson City, NV 89701

JENNIFER DAVENPORT
*Attorney General*
*State of New Jersey*
25 Market Street
Trenton, NJ 08625

LETITIA JAMES
*Attorney General*
*State of New York*
28 Liberty Street
New York, NY 10005

PETER F. NERONHA
*Attorney General*
*State of Rhode Island*
150 South Main Street
Providence, RI 02903

JAY JONES
*Attorney General*
*Commonwealth of Virginia*
202 North Ninth Street
Richmond, VA 23219

RAÚL TORREZ
*Attorney General*
*State of New Mexico*
408 Galisteo Street
Santa Fe, New Mexico 87501

DAN RAYFIELD
*Attorney General*
*State of Oregon*
1162 Court Street NE
Salem, OR 97301

CHARITY R. CLARK
*Attorney General*
*State of Vermont*
109 State Street
Montpelier, VT 05609

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** 25-7384

I am the attorney or self-represented party.

**This brief contains** 4,199 **words,** including 0 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

- ○ complies with the word limit of Cir. R. 32-1.
- ○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.
- ◉ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).
- ○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.
- ○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
  - ☐ it is a joint brief submitted by separately represented parties.
  - ☐ a party or parties are filing a single brief in response to multiple briefs.
  - ☐ a party or parties are filing a single brief in response to a longer joint brief.
- ○ complies with the length limit designated by court order dated ______.
- ○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/ Lauryn Fraas **Date** October 8, 2026

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*